**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**

v.

**Donald T. REGAN, etc.,**
**Defendant-Appellant.**

**No. 83–1981.**

United States Court of Appeals,
Tenth Circuit.

Oct. 9, 1984.

Paul G. Bardacke, Atty. Gen. of the State of New Mexico (Charlotte Uram, Asst. Atty. Gen., Santa Fe, N.M., Norman S. Thayer and Ronald Segel of Sutin, Thayer & Browne, Albuquerque, N.M., with him on the briefs), for plaintiff-appellee.

John J. McCarthy, Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael I. Paup, Ernest J. Brown, David English Carmack, Washington, D.C., with him on the briefs), for defendant-appellant.

Before HOLLOWAY, SETH and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

This case involves the interplay of two federal statutes, the Mineral Lands Leasing Act of 1920, 30 U.S.C. §§ 181 *et seq.*, and the Crude Oil Windfall Profits Tax Act of 1980, 26 I.R.C. §§ 4986 *et seq.* The Mineral Lands Leasing Act (Mineral Act) directs the Secretary of the Treasury to pay fifty percent (50%) of all mineral royalties received from federal lands to the states in which the leased federal lands are located. Pursuant to the Crude Oil Windfall Profits Tax Act (COWPTA), however, these same federal royalties are subject to a federal tax. The question is thus raised whether the United States should impose the windfall profits tax on federal royalties before or after it computes the 50% share of the royalties owed to the states.

Donald T. Regan, Secretary of the Treasury of the United States, has taken the position that the states' shares must be calculated *after* deducting the windfall profits tax, and has in fact calculated the states' shares by this method since the passage of COWPTA in 1980. Taking the contrary position, the State of New Mexico brought the present action against Regan in 1981 claiming that the Mineral Act requires payment to the states of 50% of federal royalties undiluted by the windfall profits tax. New Mexico consequently sought to recover 50% of the federal royalties used to pay the windfall profits tax, together with interest, an accounting, declaratory relief, and its attorney fees. The district court granted New Mexico's motion for summary judgment, awarding completely the state's requested relief.

Secretary Regan appeals from this decision, asserting that the court's position is contrary to the intent of Congress in passing COWPTA and the Mineral Act. In addition, he argues that even if the court properly construed the applicable statutes, it erred in awarding the states prejudgment interest on the royalties withheld. Finally, Secretary Regan contends that because this is a suit against the United States to which it has not consented, the district court lacked jurisdiction to enter-

tain New Mexico's suit. We will begin with an analysis of the jurisdictional issue.

### The District Court's Jurisdiction

It is unclear from the district court's opinion whether it considered New Mexico's suit to be an action against the United States. The court did hold, however, that if such were the case the district court nonetheless possessed jurisdiction by virtue of 28 U.S.C. § 1331, 5 U.S.C. §§ 701 *et seq.* (the Administrative Procedure Act), 28 U.S.C. § 1361 (federal mandamus), and 28 U.S.C. § 2201 (declaratory judgment). According to the court, these statutes granted the United States' consent to suit in the district court.

▮▮ As an initial matter, we hold that New Mexico's suit is indeed an action against the United States. Although Secretary Regan is the nominal defendant in the suit, sovereign immunity is determined not by the party named as the defendant, but by the issues presented and the effect of the judgment. *Transwestern Pipeline Co. v. Kerr-McGee Corp.,* 492 F.2d 878, 884 (10th Cir.1974) *cert. dismissed* 419 U.S. 1097, 95 S.Ct. 691, 42 L.Ed.2d 689 (1975). If the relief sought against a federal officer in fact operates against the sovereign, then the action must be deemed as one against the sovereign. *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1052–53, 10 L.Ed.2d 191 (1963).

New Mexico correctly points out that an exception to this general rule is recognized when a suit is brought against a governmental official challenging his or her *ultra vires* actions. *See Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 689, 69 S.Ct.

1457, 1461, 93 L.Ed. 1628 (1949). Assuming arguendo that this exception could be properly invoked in the present case,[1] the Supreme Court has rejected its application when "the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property." *Id.* at 691 n. 11, 69 S.Ct. at 1462 n. 11 (citing *North Carolina v. Temple,* 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849 (1890)). *See also Hawaii v. Gordon, supra.* The relief sought by New Mexico would, in our view, require affirmative action by the sovereign or the disposition of sovereign property. New Mexico seeks to change in a significant manner the Secretary's methods of calculating the windfall tax and state royalties; this change would clearly reduce amounts already collected in the Treasury pursuant to the windfall profits tax[2] and require the payment of substantial sums to New Mexico. Thus, as a practical matter, the "essential nature and effect of the proceeding" is such "that the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration." *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947). *See also Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *Mine Safety Co. v. Forrestal,* 326 U.S. 371, 375, 66 S.Ct. 219, 221, 90 L.Ed. 140 (1945).

Having concluded that New Mexico's suit is directed against the United States, we must determine whether the United States has consented to such suits in federal district court. *See United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769,

---

1. In our view it is doubtful that Secretary Regan's method of computing the states' royalties could be deemed *ultra vires.* New Mexico's challenge does not accurately rest upon the Secretary's lack of *delegated power* to determine the state's royalty, but rather that the Secretary's decision was *incorrect* as a matter of law. The Supreme Court has rejected such arguments asserted in the attempt to avoid the shield of sovereign immunity, and has held that actions of an officer within his *statutory authority* are the actions of the sovereign. *Larson v. Domes-*

*tic & Foreign Corp.,* 337 U.S. 682, 693–95, 69 S.Ct. 1457, 1463–64, 93 L.Ed. 1628 (1949).

2. In its complaint New Mexico noted that the Treasury had collected $3,255,000 in federal royalties from federal lands in New Mexico over a five-month period in 1980. Reducing the taxable royalties derived from public lands located in New Mexico by 50% for this five-month period alone would significantly decrease federal revenues, not to mention the dramatic national impact of such a change when considering its future application to all federal lands.

85 L.Ed. 1058 (1941). The district court, as has been mentioned, based its finding of jurisdiction upon 28 U.S.C. § 1331, and the waivers of sovereign immunity found in 5 U.S.C. § 702 (the Administrative Procedures Act), and 28 U.S.C. §§ 1361, 2201 (federal mandamus and declaratory judgment). While 28 U.S.C. § 1331 grants to the district court broad subject matter jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, that section does not include a general waiver of sovereign immunity by the United States. *See B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 724 (2d Cir.1983). We must therefore look elsewhere in order to examine the extent to which the United States has consented to suit in district court.

Section 702 of the Administrative Procedure Act contains a limited waiver of the United States' sovereign immunity. That section reads in pertinent part:

> A person suffering legal wrong because of agency action ... is entitled to judicial review thereof. An action ... *seeking relief other than money damages* ... shall not be dismissed ... on the ground that it is against the United States.

Thus, § 702 has been construed as granting the United States' consent to suit in cases involving agency action, subject however, to the proviso that the action is not one for "money damages."

New Mexico contends, and the district court held, that the present action is not one for "money damages" and that § 702 thus provides the necessary consent to suit.

In reaching this conclusion, the district court reasoned as follows:

> The State of New Mexico has requested the specific relief of one-half of those royalties received from crude oil production from federal lands within New Mexico which were used by the United States to pay the windfall profits tax. The fact that the requested relief is for specific monies held by the Treasury does not mean that the requested relief is for money damages. Damages are a sum of money used as substitutionary relief. Such relief is given to the plaintiff to substitute for a suffered loss which may not have been originally a monetary loss. Dobbs, *Handbook of the Law of Remedies*, 135, (1973). Specific relief, on the other hand, is an attempt to give back to the plaintiff that which he actually lost, not a sum measured by the amount of the loss, but the loss itself. Dobbs, at 135.... This action seeks specific, declaratory and mandamus relief.

*New Mexico v. Donald T. Regan*, No. 81–452–M Civil, at 6 (D.N.M. June 8, 1983).

We must conclude, however, that the district court failed to ascertain the intent of Congress by engaging in its semantic discussion of the meaning of the word "damages." [3] Section 702 expressly states: "Nothing herein ... confers authority to grant relief if any other statute that grants consent to suit *expressly* or *impliedly* forbids the relief which is sought." (Emphasis added.) The legislative history supporting § 702 states unequivocally that the provision is to be read in conjunction with

---

**3.** We note that the legislative history behind § 702 supports a broader view of the term "damages" than that held by the district court. For example, House Report 94–1656 states:

> The first of the additional sentences provides that claims challenging official action or nonaction, and seeking relief other than money damages, should not be barred by sovereign immunity. *The explicit exclusion of monetary relief makes it clear that sovereign immunity is abolished only in actions for specific relief* (injunctions, declaratory judgment, mandatory relief, etc.).

H.R. No. 94–1656, 94th Cong. 2d Sess. (1976), 5 U.S.Code Cong. and Admin.News, 6121, 6131 (emphasis added).

There is nothing in the legislative history which supports the proposition that the use of the word "damages" was intended by Congress to exclude certain claims for money not falling within technical common law concepts of "damages." Rather, the history supports the view that § 702 should be read with a practical eye, with the focus upon the effect of the claim—does it involve a claim for money, or does it seek only to effect action? It is solely the latter class of claims which fall within the consent to suit granted by § 702. A contrary view would seemingly run counter to the Tucker Act's express scheme for monetary claims against the United States (discussed *infra* in text at 1322).

other jurisdictional statutes waiving sovereign immunity, and, as an example, points out that the "Tucker Act impliedly forbids relief other than the remedy provided by [that] Act." H.R. No. 94–1656, 94th Cong. 2d Sess. (1976), 5 U.S.Code Cong. and Admin.News, 6121, 6133. *See also American Science & Engineering, Inc. v. Califano,* 571 F.2d 58, 63 (1st Cir.1978).

The Tucker Act (codified at 28 U.S.C. §§ 1346, 1491) grants concurrent jurisdiction to the district court and the Claims Court (formerly the Court of Claims) over money claims against the United States not exceeding $10,000. For claims against the United States involving amounts greater than $10,000 founded upon the Constitution, Acts of Congress, executive regulations, or contracts, the Act vests *exclusive* jurisdiction with the Claims Court. *Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818, 823 (10th Cir.1981); *Laguna Hermosa Corp. v. Martin,* 643 F.2d 1376, 1379 (9th Cir.1981); *Chelsea Community Hospital v. Michigan Blue Cross,* 630 F.2d 1131, 1136 (6th Cir.1980).

■■■ Several courts have noted that when the "prime objective" or "essential purpose" of the complaining party is to obtain money from the federal government (in an amount in excess of $10,000), the Claims Court's exclusive jurisdiction is triggered. *See Alamo Navajo School Board, Inc. v. Andrus* 664 F.2d 229, 233 (10th Cir.1981) *cert. denied,* 456 U.S. 963, 102 S.Ct. 2041, 72 L.Ed.2d 487 (1982); *B.K. Instrument, Inc. v. United States, supra,* 715 F.2d at 727; *Bakersfield City Sch. Dist. of Kern Cty. v. Boyer,* 610 F.2d 621, 628 (9th Cir.1979); *Hoopa Valley Tribe v. United States,* 596 F.2d 435–36 (Ct.Cl. 1979). Consequently, the Claims Court's exclusive jurisdiction may not be avoided by framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief when, in reality, the thrust of the suit is one seeking money from the United States. *Amalgamated Sugar Co. v. Bergland, supra* at 824; *Chelsea Community Hospital v. Michigan Blue Cross, supra* at 1136; *Laguna Hermosa Corp. v. Martin, supra* at 1379; *Hoopa Valley Tribe v. United States, supra* at 436. Similarly, a plaintiff may not transform a claim for monetary relief into an equitable action simply by asking for an injunction that orders the payment of money. *Jaffee v. United States,* 592 F.2d 712, 715 (3d Cir.1979) *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979).

The district court concluded that the Claims Court could not assert jurisdiction over New Mexico's suit because of the "equitable relief" requested by the state. We disagree. New Mexico's claim for past royalties and prejudgment interest is clearly founded upon provisions of an "Act of Congress" (the Mineral Act), and exceeds the $10,000 jurisdictional limit of the Tucker Act. New Mexico's primary purpose is to fix the government's and not the Secretary's liability; accordingly, we must conclude that the suit is essentially one designed to reach money which the government owns. *See Mine Safety Co. v. Forrestal, supra* 326 U.S. at 375, 66 S.Ct. at 221. This, then, is a claim for money cognizable under the Act. New Mexico's additional requests for an accounting and declaratory relief are merely incidental and subordinate to the basic suit for money. Although such has not always been the case, the Claims Court may now grant equitable relief as an incident to the award of money in the interest of affording complete justice to the parties. 28 U.S.C. § 1491(a)(3) (1976) (*as amended by* Pub.L. No. 97–164, 96 Stat. 25). *See Ellis v. United States,* 610 F.2d 760, 762 (Ct.Cl.1979).

■■ New Mexico argues that the federal mandamus and declaratory judgment statutes (28 U.S.C. §§ 1361, 2201) provide the district court with an alternative basis of jurisdiction. While this argument, standing alone, has merit, we believe that allowing the district court to entertain these equitable claims would be improper in the context of this case. Having concluded that New Mexico's claim is primarily one for money over which the Claims Court possesses exclusive jurisdiction, it would not be in the interest of justice or public

policy to allow the district court to determine New Mexico's incidental equitable claims. It is settled that the declaratory judgment statute does not itself confer jurisdiction on a federal court where none otherwise exists. *Amalgamated Sugar Co. v. Bergland, supra* at 822. In addition, several courts have specifically concluded that mandamus is not available in the district court when relief can be granted in the Claims Court. *See, e.g., American Science & Engineering, Inc. v. Califano, supra* at 64; *Carter v. Seamans*, 411 F.2d 767, 774 (5th Cir.1969) *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). This court has similarly noted the general principle that mandamus should not be invoked if adequate alternative relief is available at law. *United States v. West*, 672 F.2d 796, 799 (10th Cir.1982) *cert. denied*, 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982). Finally, as we have previously noted, the Claims Court does not *lose* jurisdiction when equitable claims are asserted in conjunction with primary claims for money against the United States. Similarly, the district court should not *gain* jurisdiction over what is fundamentally a Tucker Act claim simply because the complaint contains requests for equitable relief. *See Portsmouth Redevelopment & Housing Authority v. Pierce*, 706 F.2d 471, 474 (4th Cir.1983) *cert. denied*, —— U.S. ——, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

We must conclude, therefore, that the trial court lacked jurisdiction to enter summary judgment in favor of New Mexico. We need not discuss the remaining issues raised by the appellant.

We direct that this case be transferred to the United States Claims Court for adjudication on the merits "in the interest of justice" rather than dismissing the suit.[4]

4. 28 U.S.C. § 1631 provides:
Whenever a civil action is filed in a court as defined in section 610 of this title [28 U.S.C. § 610] or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer

*See Keller v. Merit Systems Protection Board*, 679 F.2d 220, 223 (11th Cir.1982). *Accord, Dr. John T. MacDonald Foundation v. Califano*, 571 F.2d 328, 332 (5th Cir.1978) (en banc), *cert. denied*, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978).

The case is transferred to the United States Claims Court pursuant to 28 U.S.C. § 1631.

such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed or noticed for the court to which it is transferred on the date upon which it was actually filed or noticed for the court from which it is transferred.