Marjorie L. THOMAS, Geneva Miller, Glenda McKinley, and Tina Marie Brown, Plaintiffs,

v.

Samuel PIERCE, Secretary of United States Department of Housing and Urban Development; Gerald F. Simpson, Regional Administrator-Regional Housing Commissioner of Region VII of Department of Housing and Urban Development; Jerry Bajaj, Vanita Bajaj, Bobby Abraham, and Usha Abraham, d/b/a Highland Park Townhouse Associates, Defendants.

Civ. A. No. 86–2439.

United States District Court, D. Kansas.

May 20, 1987.

Stephen M. Kirschbaum, Luis Mata, Wyandotte-Leavenworth Legal Service, Kansas City, Kan., for plaintiffs.

Benjamin L. Burgess, Jr., U.S. Atty., Janice Miller Karlin, Asst. U.S. Atty., Kansas City, Kan., for defendants Pierce and Simpson.

Richard C. Wallace, Kansas City, Kan., for defendants Bajaj and Abraham.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court upon the following motions: (1) defendants Pierce

and Simpson's motion to dismiss or, in the alternative, for summary judgment; (2) defendants Bajaj and Abrahams' motion to dismiss or, in the alternative, for summary judgment; and (3) plaintiffs' motion for class certification. For the reasons discussed below, the court holds that this action must be dismissed as to all defendants.

### I. *Factual Background.*

This is an action for declaratory and injunctive relief seeking to declare invalid the sale of Highland Park Townhouses I, II, and III by defendants Samuel Pierce, Secretary of the United States Department of Housing and Urban Development [hereinafter HUD], and Gerald Simpson, Regional Administrator and Regional Housing Commissioner of Region VII of HUD. The Highland Park Townhouses are a multifamily apartment project consisting of 126 units located in Kansas City, Kansas. It was originally constructed with a federally-insured loan that carried a below market interest rate pursuant to section 221(d) of the National Housing Act. Many, and perhaps all, of the tenants of Highland Park were lower-income individuals and eligible for rent subsidies pursuant to section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f.

HUD acquired title to Highland Park through foreclosure and subsequently sold the entire project to the defendants Jerry Bajaj, Vanita Bajaj, Bobby Abraham and Usha Abraham. HUD sold the townhouses with section 8 subsidies attached to 38 of the 126 units. The subsidy payments take the form of a housing assistance payment made by HUD to the owners on behalf of a tenant in an amount representing the difference between the market rent and thirty percent of the tenant's adjusted monthly income. Plaintiffs contend that HUD's sale of the townhouses without section 8 subsidies on 100 percent of the units violates 12 U.S.C. § 1701z–11 and the regulations promulgated pursuant thereto, 24 C.F.R. §§ 290.1 *et seq.*

Plaintiffs seek review of HUD's actions pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* Plaintiffs have either applied for section 8 housing assistance and are currently on a waiting list, or have attempted to apply for housing assistance and have been refused an application because the waiting list is too long. Plaintiffs are income eligible for housing assistance payments under section 8 and desire to live at Highland Park Townhouses if they are repaired and properly subsidized.

### II. *Statutory Background.*

In 1937, Congress enacted the United States Housing Act of 1937, creating the public housing program to provide decent, safe, sanitary and affordable housing to lower-income families. Pursuant to 12 U.S.C. § 713(k), the Secretary of HUD is authorized to acquire title to projects for which mortgage insurance has been issued by the government, and is authorized to operate and/or sell any property so acquired consistent with National Housing Act policies and objectives. 12 U.S.C. § 1713(*l*); 42 U.S.C. § 1441.

The section 8 subsidy program was enacted as part of the Housing and Community Development Act of 1974, Pub.L. No. 93–383, 88 Stat. 633 (codified, as amended, at 42 U.S.C. § 1437f). The purpose of the section 8 program is to aid "lower-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a). To achieve this purpose, the Secretary of HUD is authorized to enter into contracts to make housing assistance payments to private owners of housing in which some or all of the units are leased to lower-income families. 42 U.S.C. § 1437f; 24 C.F.R. § 886.-309. These payments are the subsidies referred to throughout this opinion.

In 1978, Congress enacted the Housing and Community Development Amendments, Pub.L. No. 95–557. Section 203 of Title II of Public Law 95–557, codified at 12 U.S.C. § 1701z–11, deals with the management and disposal of multifamily housing projects. Subsection (a) provides as follows:

It is the policy of the United States that the Secretary of Housing and Urban Development (hereinafter referred to as

the "Secretary") shall manage and dispose of multifamily housing projects which are owned by the Secretary in a manner consistent with the National Housing Act [12 USCS §§ 1701 et seq.] and this section. The purpose of the property management and disposition program of the Department of Housing and Urban Development shall be to manage and dispose of projects in a manner which will protect the financial interests of the Federal Government and be less costly to the Federal Government than other reasonable alternatives by which the Secretary can further the goals of—

(1) preserving the housing units so that at least those units which are occupied by low- and moderate-income persons or which are vacant, at the time of acquisition, are available to and affordable by such persons;

(2) preserving and revitalizing residential neighborhoods;

(3) maintaining the existing housing stock in a decent, safe, and sanitary condition;

(4) minimizing the involuntary displacement of tenants;

(5) minimizing the need to demolish projects; and

(6) maintaining the project for the purpose of providing rental or cooperative housing.

The Secretary, in determining the manner by which a project shall be managed or disposed of, may balance competing goals relating to individual projects in a manner which will further the achievement of the overall purpose of this section.

12 U.S.C. § 1701z–11(a).

The statute contemplates that the Secretary will promulgate such rules and regulations as may be necessary to carry out its provisions. 12 U.S.C. § 1701z–11(g). Accordingly, the Secretary has issued several regulations governing the management and disposal of HUD-owned multifamily housing projects. *See* 24 C.F.R. §§ 290.1 *et seq.* Section 290.25(b) provides:

Formerly subsidized projects and formerly unsubsidized projects serving as a lower income housing resource, as determined pursuant to § 290.27(c), may not be sold without a subsidy if there is a need for low and moderate income housing in the community.

Furthermore, section 290.27(b) provides:

A formerly subsidized project shall be allocated subsidy ... sufficient to assist 100% of the units. Provided, however, that the Director may recommend disposition for less than 100% of the units if the Director makes a written finding that such a sale will promote a racially mixed or mixed income tenancy and the amount of subsidy provided is at least sufficient to assist all eligible tenants residing in the project.

Plaintiffs contend that HUD's sale of the Highland Park Townhouses with section 8 subsidies attached to only 38 of the 126 units, rather than to all of the units, was arbitrary and capricious, an abuse of discretion, and otherwise contrary to law. Plaintiffs seek a declaratory judgment that the conduct of the Secretary and Administrator in processing and approving the sale of the Highland Park Townhouses was in violation of 12 U.S.C. § 1701z–11 and 24 C.F.R. §§ 290.25 and 290.27. Plaintiffs also seek an order requiring the Secretary and Administrator to repurchase Highland Park Townhouses and reprocess its disposition so that it is sold with section 8 rent subsidies attached to all 126 units. Furthermore, plaintiffs seek an order requiring the Secretary and Administrator to provide 126 units of section 8 subsidies to the Kansas City, Kansas, area in general, equivalent to the amount of subsidy that would have been required had federal statutes and regulations governing HUD's property disposition been followed.

III. *Motion to Dismiss or, in the Alternative, for Summary Judgment by Defendants Pierce and Simpson.*

Plaintiffs have sued defendant Samuel Pierce in his official capacity as Secretary of HUD and defendant Gerald Simpson in his official capacity as Regional Adminis-

trator and Housing Commissioner of Region VII of HUD. These defendants seek to dismiss plaintiffs' action based upon the doctrine of sovereign immunity.

■ A party suing the United States, its agencies or officers, must allege both a basis for the court's jurisdiction, *see* Fed.R. Civ.P. 8(a)(1), and a specific statute containing a waiver of the government's immunity from suit, *see* C. Wright & A. Miller, *Federal Practice and Procedure* § 1212 at 102. Plaintiffs' amended complaint invokes jurisdiction against Pierce and Simpson pursuant to 28 U.S.C. §§ 1331, 1337 and 1361. The complaint also alleges that declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. §§ 701–706. Plaintiffs' amended complaint fails to allege any statutory basis for waiver. Plaintiffs, however, assert in their response to defendants' motion that the government's waiver of immunity is predicated upon 12 U.S.C. § 1702.

■ The defendants do not dispute plaintiffs' invocation of subject matter jurisdiction, and thus the court will not address this issue in any detail. The court finds that this action arises under 12 U.S.C. § 1701z–11, and therefore holds that subject matter jurisdiction is proper under 28 U.S.C. § 1331 (federal question jurisdiction). *See generally, Frisby v. United States Dept. of Housing & Urban Development,* 755 F.2d 1052 (3d Cir.1985).

■ We will next consider the main issue before us, that is, whether plaintiffs' claims against Pierce and Simpson are barred by the doctrine of sovereign immunity. It is well established that the United States, as sovereign, is immune from suit except as it consents to be sued. *See United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1982); *United States v. Sherwood,* 312 U.S. 584, 586–87, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). The defendants argue that although plaintiffs' action names them as defendants in their capacities as HUD officials, this action is in reality one against the United States government and barred by sovereign immunity. As a general rule, the court must look beyond the parties named in the pleadings as defendants and look at the issues presented and the effect of a potential judgment to determine whether the action is one brought against the government. *State of New Mexico v. Regan,* 745 F.2d 1318, 1320 (10th Cir.1984), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985). If the relief sought against a federal official in fact operates against the sovereign, then the action must be deemed as one against the sovereign. *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963). More specifically, a suit is considered against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted). *Accord Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101 and n. 11, 104 S.Ct. 900, 908 and n. 11, 79 L.Ed.2d 67 (1983).

■ We agree with defendants that the relief requested by plaintiffs, that is, HUD's subsidizing of all units in the project, necessarily involves affirmative action on the government's part and would require the expenditure of public funds. Thus, as a practical matter, we must conclude that the effect of any judgment against Pierce and Simpson would operate against the sovereign.

■ Having decided that plaintiffs' suit against Pierce and Simpson is directed against the United States, we must next determine whether the United States has waived its immunity and consented to such a suit in federal district court. A waiver of sovereign immunity cannot be implied and must be unequivocally expressed by Congress. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Furthermore, any waiver must be construed strictly in favor of the sovereign and not enlarged beyond what the statutory language requires. *Ruckelshaus*

*v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983). The plaintiff who sues the United States bears the burden of showing that the government has consented to suit. *Cominotto v. United States,* 802 F.2d 1127, 1129 (9th Cir.1986); *Cole v. United States,* 657 F.2d 107, 109 (7th Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981).

As we noted above, plaintiffs' amended complaint fails to allege any specific statute waiving the government's immunity from suit. Plaintiffs, however, have alleged several jurisdictional grounds for this action in their complaint and have raised one statutory basis for waiver in their response to defendants' motion. The court will examine all of these statutes to determine whether any of these waive the government's immunity.

Plaintiffs have alleged jurisdiction under 28 U.S.C. §§ 1331, 1337 and 1361 and 28 U.S.C. §§ 2201 and 2202. Although 28 U.S.C. § 1331 grants district courts broad subject matter jurisdiction to hear all civil actions under the United States Constitution, laws or treaties, it is well settled that the section is not a general waiver of sovereign immunity. *See State of New Mexico v. Regan,* 745 F.2d 1318, 1321 (10th Cir.1984). Similarly, neither the Mandamus Act, 28 U.S.C. § 1361, nor the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, waive the government's sovereign immunity in mandamus or declaratory judgment actions. *See Benvenuti v. Department of Defense,* 587 F.Supp. 348, 352 (D.D.C.1984) (declaratory judgments), *aff'd without opinion,* 802 F.2d 469 (C.A.Fed.1985); *Craig v. Colburn,* 414 F.Supp. 185, 193 (D.Kan.1976) (mandamus action). In addition, 28 U.S.C. § 1337, which provides that district courts have original jurisdiction of any civil action arising under acts of Congress regulating commerce or protecting trade, does not provide for waiver. *Foreman v. General Motors Corp.,* 473 F.Supp. 166, 181 (E.D.Mich. 1979).

Plaintiffs have also alleged jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* Section 702 contains a limited waiver of the government's sovereign immunity. *Regan,* 745 F.2d at 1321. That section reads in pertinent part: "A person suffering legal wrong because of agency action ... is entitled to judicial review thereof. An action ... *seeking relief other than money damages* ... shall not be dismissed ... on the ground that it is against the United States." 5 U.S.C. § 702 (emphasis added). This section has been construed as granting the United States' consent to suit in cases involving agency action, subject to the proviso that the action not seek "money damages." *Regan,* 745 F.2d at 1321.

Is this action one for "money damages"? Plaintiffs argue that although a judgment in favor of plaintiffs would expend public monies (defendants contend that subsidies on all 126 units would cost at least 3 million dollars), such a judgment "falls within the category of equitable restitution, which must be distinguished from an award of damages for purposes of sovereign immunity."

A similar argument was rejected by the Tenth Circuit in *State of New Mexico v. Regan,* 745 F.2d 1318 (10th Cir.1984). In that case, the State of New Mexico sought declaratory and mandamus relief against the Secretary of the Treasury. The case involved the interplay of two federal statutes, the Mineral Lands Leasing Act and the Crude Oil Windfall Profits Tax Act. The Mineral Act required the Secretary to pay fifty percent of all mineral royalties received from federal lands to the states in which the federal lands were located. Pursuant to the Windfall Profits Act, the federal royalties were subject to a federal tax. The Secretary had been calculating the states' shares only *after* deducting the windfall profits tax. New Mexico claimed that the Secretary was required to pay the states fifty percent of the royalties *undiluted* by the tax. New Mexico sought a declaratory judgment that the Secretary's method of calculation was unlawful and mandamus relief requiring the Secretary to calculate the royalties in the proper manner. The state also sought to recover its

rightful share of the royalties previously withheld.

The district court held:

The State of New Mexico has requested the specific relief of one-half of those royalties received from crude oil production from federal lands within New Mexico which were used by the United States to pay the windfall profits tax. The fact that the requested relief is for specific monies held by the Treasury does not mean that the requested relief is for money damages. Damages are a sum of money used as substitutionary relief. Such relief is given to the plaintiff to substitute for a suffered loss which may not have been originally a monetary loss. Specific relief, on the other hand, is an attempt to give back to the plaintiff that which he actually lost, not a sum measured by the amount of the loss, but the loss itself. This action seeks specific, declaratory and mandamus relief.

*Id.* at 1321 (quoting *New Mexico v. Regan,* No. 81–452–M Civil, at 6 (D.N.M., June 8, 1983) (citations omitted)). Based on the above reasoning, the district court concluded that the action was not one for money damages and that section 702 provided the necessary consent to sue.

The Tenth Circuit reversed the district court and held that the action, although framed in terms of declaratory and mandamus relief, was in reality one for "money damages" not protected by section 702. The Tenth Circuit noted that the legislative history behind section 702 supported a broader view of the term "damages" than held by the district court. *Id.* at 1321 n. 3 (citing H.R. No. 94–1656, 94th Cong.2d Sess. (1976), *reprinted in* 5 U.S.Code Cong. & Admin.News 6121, 6131). The Tenth Circuit found that the legislative history "supports the view that section 702 should be read with a practical eye, with the focus upon the effect of the claim—does it involve a claim for money, or does it seek only to effect action?" *Id.* The court held that district courts must look to the "thrust of the suit" to see if the plaintiff is seeking money from the United States, and if so, the claim is barred. *Id.* at 1322. A plain-

tiff may not avoid sovereign immunity merely by framing the complaint in terms of seeking injunctive, declaratory or mandatory relief. *Id.*

█ Applying these standards to the case at bar, the court finds that the thrust of plaintiffs' suit goes beyond mere injunctive and declaratory relief. Plaintiffs' prime objective is to have HUD subsidize all of the units of the project, which would require extensive expenditure of public funds. We conclude that this suit is essentially one designed to reach government monies and is a claim for which the United States has not consented to suit under the Administrative Procedure Act.

The only remaining basis for waiver is found under 12 U.S.C. § 1702. This statute provides that the Secretary of HUD "shall, in carrying out the provisions of this subchapter [subchapter I] and subchapters II, III, V, VI, VII, VIII, IX–A, IX–B and X of this chapter [the National Housing Act], be authorized, in his official capacity to sue and be sued in any court of competent jurisdiction, State or Federal." The landmark case interpreting section 1702 is *Federal Housing Authority v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). The question in *Burr* was whether the Federal Housing Administration [the predecessor of HUD] was subject to garnishment for monies due an employee. The Court held that the "sue and be sued" clause of what is presently codified as section 1702 waived the administration's sovereign immunity with respect to the garnishment action. The court observed:

No question as to the power of Congress to waive the governmental immunity is present. For there can be no doubt that Congress has full power to endow the Federal Housing Administration with the government's immunity from suit or to determine the extent to which it may be subjected to the judicial process.

. . . .

We start from the premise that such waivers by Congress of governmental immunity in [the] case of such federal instrumentalities should be liberally construed. This policy is in line with the

current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity where federal governmental corporations are concerned. Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather, if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue or be sued," that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

*Id.* at 244–45, 60 S.Ct. at 490 (citations omitted).

The Court further held that although section 1702 waived the administration's sovereign immunity, its liability was limited to "only those funds which have been paid over to the Federal Housing Administration in accordance with [section 1702] and which are in its possession, severed from Treasury funds and Treasury control." *Id.* at 250, 60 S.Ct. at 493.

 In light of the above, it is clear that plaintiffs may recover against the Secretary pursuant to section 1702 only if they can show that a judgment against the Secretary would come from funds in the possession and control of HUD as distinguished from general treasury funds. This requirement is satisfied if plaintiffs can establish that the judgment will be paid out

of funds appropriated under the National Housing Act and in the control or subject to the discretion of the Secretary. *Johnson v. Secretary of and United States Department of Housing,* 710 F.2d 1130, 1138 (5th Cir.1983).

Plaintiffs have failed to designate any possible sources for such funds. Instead, plaintiffs argue that "the overwhelming line of authority" has allowed recovery under similar circumstances without providing the existence of the segregated fund. The court has reviewed the cases cited by plaintiffs and find that they do not stand for this proposition. In fact, several of these cases identified a specific fund from which the judgment could be obtained. *See, e.g., S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 36 (2d Cir. 1979) (judgment could be paid out of funds appropriated under the National Housing Act and in the control of the Secretary even though not paid out of funds originally earmarked for the housing project); *Abrams v. Hills,* 547 F.2d 1062, 1069 (9th Cir.1976) (HUD reserve fund for operating subsidies would satisfy judgment).

 Without a doubt, *Burr* requires that the plaintiff establish the existence of some fund in the possession and control of HUD from which a potential judgment against the Secretary may be recovered. Because plaintiffs have failed to even suggest a possible source of funds, the court must conclude that plaintiffs have failed to satisfy their burden in establishing the government's waiver of sovereign immunity.

 Even if we were to allow plaintiffs the opportunity through further discovery to determine whether any separate funds exist, the court would nevertheless conclude that the government has not waived its immunity. Plaintiffs have failed to satisfy a second requirement under section 1702, that of establishing that their cause of action arises under one of the subchapters specifically enumerated therein. As the Tenth Circuit noted in *United States v. Adams,* 634 F.2d 1261, 1265 (10th Cir.1980), the waiver contained in section 1702 "is specifically limited to actions involving

housing renovation, mortgage insurance, national mortgage associations, war housing insurance for investments in rental housing, armed services housing mortgage insurance, mortgage insurance for land development, and mortgage insurance for group practice facilities." The terms of section 1702 themselves provide that the Secretary shall be authorized to sue and be sued in his official capacity only "in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, VIII, IX–A, IX–B, and X."

Plaintiffs' claims against the Secretary allege that he acted arbitrarily and capriciously in carrying out the provisions of 12 U.S.C. § 1701z–11. This section was not enacted as part of the National Housing Act. Furthermore, as plaintiffs concede, this statute is not found within one of the subchapters enumerated in section 1702. Plaintiffs nonetheless argue that the Secretary has waived its immunity under section 1701z–11 because the Secretary's sale of the townhouses was a transfer of a kind that should be "piggybacked" onto other projects that are specifically enumerated under section 1702.

There is support in the case law for plaintiffs' argument. Several cases have held that section 1702 waives the Secretary's immunity in carrying out statutory provisions not found in the subchapters enumerated therein. In *Pennsylvania v. Lynn*, 501 F.2d 848 (D.C.Cir.1984), the court held that the Secretary of HUD could not assert the defense of sovereign immunity in an action to compel the Secretary to reinstate certain low-income housing programs under 12 U.S.C. §§ 1701s, 1701x, 1715z and 1715z–1. These sections dealt with rent supplement payments and assistance to nonprofit sponsors of low- and moderate-income housing, and did not fall within the enumerated subchapters of section 1702. The court noted that the rent supplement program was "not an independent housing construction program but an incentive that is piggybacked onto projects under other programs," *id.* at 850, and that its "continued vitality ... is, therefore, dependent in the first instance upon the continued operation of the underlying con-

struction programs onto which it is piggybacked." *Id.* at 867. Because the program under which the rent supplement program was "piggybacked" fell within the enumerated subchapters to which the section 1702 waiver applied, the District of Columbia Circuit concluded that the waiver should also be construed to apply to actions arising under the section 1701s rent supplement provision itself.

Similarly, in *Estrada v. Hills*, 401 F.Supp. 429 (N.D.Ill.1975), the court held that the Secretary was amenable to suit under regulations promulgated pursuant to 12 U.S.C. § 1701 even though section 1701 was not found within one of the enumerated subchapters. The court noted that the Secretary was acting in his official capacity in acting under section 1701 and thus amenable to suit. Additionally, in *Griffin v. Harris*, 480 F.Supp. 1072 (E.D.Pa.1979), the district court held that the Secretary was amenable to suit for his actions under 12 U.S.C. § 1701s, even though that section did not fall within the enumerated subchapters. The court found that the program of rent supplements under section 1701 was an incentive that was superimposed upon other federal housing and mortgage insurance programs and related to the Secretary's official functions. *Id.* at 1077.

All three of these cases rely heavily on the Supreme Court's statement in *Burr* that waivers by Congress of governmental immunity in the case of federal agencies should be liberally construed given "the current disfavor of the doctrine of governmental immunity from suit." 309 U.S. at 245, 60 S.Ct. at 490. It is this court's belief that there no longer exists such a disfavor of the doctrine of governmental immunity. Although the Supreme Court has not had occasion to address the doctrine with respect to section 1702 since *Burr* was decided in 1940, other Supreme Court decisions have demonstrated a strong opposition to liberally construing the doctrine. For example, in recent years, the Court has held that a grant of a private right of action against the United States must be made with specificity, *see United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47

L.Ed.2d 114 (1976), and cannot be implied but must be unequivocally expressed, *see United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Furthermore, the Court, in 1983, held that waivers of immunity must be construed strictly in favor of the sovereign, and not enlarged beyond what the statutory language requires. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983).

In holding that the waiver contained in section 1702 should be liberally construed, the Supreme Court in *Burr* was addressing the issue of whether a certain type of suit, *i.e.* garnishment, was within the "sue and be sued" clause of section 1702. The Court was not addressing the issue before us of whether the waiver contained in section 1702 should be liberally extended to other subchapters not enumerated therein. Given the plain meaning of section 1702 and the Tenth Circuit's assertion that the waiver contained in section 1702 is specifically limited to actions involving the enumerated subchapters of the National Housing Act (*see Adams, supra,* 634 F.2d at 1265), we decline to find waiver for an action that not only fails to arise under one of the enumerated subchapters, but also fails to arise under the National Housing Act. We therefore hold that HUD has not consented to suit under section 1702 for violations of section 1701z–11.

In light of the foregoing, we conclude that the defendants Pierce and Simpson are immune under the doctrine of sovereign immunity. The court will therefore grant said defendants' motion to dismiss.

IV. *Motion to Dismiss or, in the Alternative, for Summary Judgment by the Defendants Bajaj and Abraham.*

The nongovernmental defendants, the current owners of the Highland Park Townhouses, seek dismissal or summary judgment based on numerous grounds. Plaintiffs' amended complaint makes no specific claims against these individuals and alleges only that, as the buyers of the Highland Park Townhouses, they are indispensable parties because "they have an interest in these proceedings which may be affected should the Court grant any relief against [the] federal defendants."

The court, having dismissed this action against the federal defendants, finds that plaintiffs have failed to state a claim against the defendants Bajaj and Abraham. Their motion to dismiss will therefore be granted.

V. *Plaintiffs' Motion for Class Certification.*

Because we have determined that this action must be dismissed, plaintiff's motion for class certification is now moot.

IT IS THEREFORE ORDERED that defendants Samuel Pierce and Gerald Simpson's motion to dismiss is granted.

IT IS FURTHER ORDERED that defendants Jerry Bajaj, Vanita Bajaj, Bobby Abraham and Usha Abraham's motion to dismiss is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for class certification is denied as moot.