**UNITED STATES of America, Plaintiff,**

v.

**ROYAL GEROPSYCHIATRIC SERVICES, INC., et al., Defendants.**

No. 4:97–CV–218.

United States District Court, N.D. Ohio, Eastern Division.

June 2, 1998.

Kent W. Penhallurick, Richard H. Blake, Office of the U.S. Attorney, Cleveland, OH, for United States of America, plaintiff.

Sheila P. Cooley, Cleveland, OH, Michael J. Jordan, Walter F. Ehrnfelt, Waldheger, Coyne & Associates, Cleveland, OH, Mark J. Skakun, III, David L. Drechsler, John B. Schomer, Buckingham, Doolittle & Burroughs, Akron, OH, for Defendants.

## OPINION AND ORDER

GWIN, District Judge.

On May 13, 1997, the plaintiff and third-party defendants[1] filed a motion to dismiss the counterclaim and third-party complaint [Doc. 18]. The government brought the underlying action under the False Claims Act to recover damages and penalties from the defendants for their alleged submission of false reimbursement claims with Part B of the Medicare Program, the state of Ohio Medicaid Program, and the federal Railroad Retirement Board Medicare Program.

Movants seek to dismiss the counterclaim for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Though the federal rules favor, and sometimes require, the courts to adjudicate counterclaims and new suits in the same litigation, the Medicare Act,[2] legal precedent and federal policies generally prevent these defendants from raising these claims in a federal district court before exhausting their administrative remedies. Since this Court would have to dismiss the counterclaim if brought now as an original suit, the Court will grant the motion for the reasons outlined below.

### I

The federal government brought an eight-count complaint against the defendants alleging they submitted false claims for services to Medicare, Medicaid, and Railroad Retirement patients. The Court recently denied the defendants' motion to dismiss two counts.[3]

A group of psychiatrists who specialize in geriatric psychiatry own Defendant Royal Geropsychiatric Services, Inc., a professional corporation. Geriatric psychiatry is the treatment of mental diseases and disorders of the elderly. Under agreements with the federal government and the fiscal carriers, Royal provides medical and other health services to Medicare beneficiaries, including 24-hour psychiatric coverage for nursing home patients. Defendant Nursing Home Services, Inc. provides billing and office management services to Royal. Four psychiatrists employed by Royal and the two principals of Nursing Home Services are individual defendants.[4]

The claims alleged to be in violation of the False Claims Act are bills for psychiatric services to nursing home patients involving psychiatric diagnostic or evaluative procedures and psychiatric therapeutic procedures.

Royal summarizes the counterclaim and third-party complaint at issue as follows:

1) That, under the Declaratory Judgment Act, this Court declare that

a) the Secretary has not implemented any regulations that prohibit the Defendants' billing and coding practices or may serve as the basis for False Claims Act liability;

b) the government's use of the False Claims Act in this manner is contrary to the purpose and intent of the False Claims Act; and

c) the U.S. Attorney may not engage in Medicare policy making, as Congress has delegated Medicare policy making exclusively to the Secretary.

2) That the Court rule the False Claims Act as applied in this case is void for vagueness because, in violation of the Fifth Amendment right to due process, it does not provide health care providers with notice of what conduct is re-

---

1. The third-party defendants include Donna Shalala, the Secretary of the U.S. Department of Health and Human Services; Nationwide Mutual Insurance Company; and the MetraHealth Insurance Company. Nationwide is an independent contractor with the Secretary and the Health Care Financing Administration (HCFA) and administers the Medicare Part B program in the state of Ohio. MetraHealth, a Georgia company, administers railroad Medicare claims. Both are Medicare "fiscal carriers."

2. Title XVIII of the Social Security Act, 79 Stat. 291, as amended, 42 U.S.C. § 1395 et seq.

3. Order of May 12, 1998 [Doc. 56]. Defendants unsuccessfully sought to dismiss for lack of specificity in pleading a claim brought under the False Claims Act and a common law fraud claim.

4. Defendant Dr. Sanford Summers settled with the government and the claims and counterclaims between Summers on the one hand and the government and third-party defendants on the other were dismissed with prejudice in February 1998. *See* Doc. 51.

quired nor provide prosecutors with sufficient standards to enforce the law;

3) That the carriers breached their obligations under their carrier contracts with Medicare, and that breach resulted in harm to Royal, a third-party beneficiary to the carrier's contractual obligations;

4) That Royal is entitled to indemnification for the Secretary's breach of her statutory duty to promulgate regulations necessary to administer the Medicare program and the carriers' breach of their contractual and regulatory duties; and

5) That Royal is entitled to recoupment for any underbillings arising out of the same transactions that the government contends were improperly billed.

There are statutory fines and treble damage penalties under the False Claims Act,[5] and federal regulations [6] permit the government to exclude from Medicare those providers convicted under the False Claims Act.

## II

In passing on a motion to dismiss, whether on grounds of lack of jurisdiction over the subject matter or for failure to state a cause of action, allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). *See also In re Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997) (holding that when ruling on a motion to dismiss for failure to state a claim, all factual allegations made by plaintiff are deemed to be admitted, and ambiguous allegations must be construed in plaintiff's favor), *cert. denied sub nom. Murphy v. So-*

*famor Danek Group,* —— U.S. ——, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998).

Further, when considering a motion to dismiss for lack of subject matter jurisdiction, this Court may look beyond jurisdictional allegations in the complaint and the Court may consider whatever evidence is submitted. *Fairport Intern. Exploration, Inc. v. Shipwrecked Vessel Known as the Captain Lawrence,* 105 F.3d 1078, 1081 (6th Cir.1997), *cert. granted and judgment vacated on other grounds,* —— U.S. ——, 118 S.Ct. 1558, 140 L.Ed.2d 790 (1998).

## III

A claim arising out of the same transaction or occurrence that is the subject matter of the opposing party's claim, and that will not require for adjudication other parties beyond the court's jurisdiction, must be asserted as a compulsory counterclaim in federal court. Fed.R.Civ.P. 13(a). However, there is an exception in the federal rules for counterclaims against the federal government. Fed. R.Civ.P. 13(d).[7]

■ The opposing party may assert a counterclaim in actions that the government files "only when the government has waived its immunity from suit on that claim." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1427 (2d ed.1990). Courts have routinely rejected an implied waiver theory here that the government should be treated as any private litigant. *Id.* (citing cases at note 2).[8]

■ The federal government is immune from suit except as it consents to be sued. *See United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). A waiver of sovereign immunity cannot be

---

**5.** *See* 31 U.S.C. § 3729(a)(7).

**6.** *See* 42 C.F.R. § 1001.201(a).

**7.** Rule 13(d) reads:
 **(d) Counterclaim Against the United States.** These rules shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits against the United States or an officer or agency thereof.

**8.** Commentators note that the Supreme Court of the United States has yet to rule directly how statutory waivers of sovereign immunity relate to counterclaims. One suggests that a Supreme Court decision on third-party practice and the Federal Tort Claims Act, however, may underpin a more liberal rule in the future on counterclaims against the government. 6 Charles Alan Wright, et al., Federal Practice and Procedure, § 1427 (2d ed.1990) (citing *United States v. Yellow Cab Co.,* 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951)).

implied and Congress must express the waiver unequivocally. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). The party suing the government has the burden of showing that the government consented to suit. *Thomas v. Pierce,* 662 F.Supp. 519, 524 (D.Kan.1987). In the case of this counterclaim, defendants bear that burden and do not raise sufficient evidence to overcome the government's motion to dismiss.

Here, the defendants and third-party plaintiffs fail to cite an explicit waiver of sovereign immunity in their counterclaim. They do cite in their pleading the following grounds for jurisdiction: 28 U.S.C. § 1345 (district court's original jurisdiction over cases filed by federal government); § 1331 (federal question jurisdiction); § 1346(a)(2) (the Tucker Act); § 1361 (federal jurisdiction for mandamus against federal officials); and § 2201 (federal declaratory judgment jurisdiction).

## IV

Neither §§ 1331 nor 1346 support a waiver of sovereign immunity for this counterclaim. Judicial review of claims arising under the Medicare Act is available only after the Secretary of Health and Human Services renders a final decision, similar to the exhaustion of administrative remedies scheme provided for old age and disability claims arising under another title of the Social Security Act.

Individuals dissatisfied with a Medicare coverage or benefits determination are "entitled to a hearing thereon by the Secretary to the same extent as is provided in [42 U.S.C. § 405(b)] and to judicial review of the Secretary's final decision after a hearing as is provided in [42 U.S.C. § 405(g)]." 42 U.S.C. § 1395ff(b)(1).

Section 405(h), which is incorporated in the Medicare statute through 42 U.S.C. § 1395ii, provides that no decision of the Secretary "shall be reviewed by any person, tribunal, or governmental agency except as herein provided." It further provides that "[n]o action

against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 to recover on any claim arising under this subchapter."

In *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), the Supreme Court held that § 405(g) "is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act." 466 U.S. at 615, 104 S.Ct. 2013. Thus, section 405(h) barred the district court's exercise of federal question jurisdiction over a challenge that the Health Care Financing Administration violated the Administrative Procedure Act ("APA") when it issued an instruction to fiscal intermediaries prohibiting payments for a surgical procedure without complying with federal rulemaking requirements. 466 U.S. at 607, 613–14, 104 S.Ct. 2013.

The Court stated that "all aspects of respondents' claim for benefits should be channeled first into the administrative process which Congress has provided for the determination of claims for benefits." *Id.* at 614, 104 S.Ct. 2013. The Court thus reaffirmed its holding in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), construing the "claim arising under" section 405(h) "quite broadly." *Ringer,* 466 U.S. at 615, 104 S.Ct. 2013. *Ringer* also held that "it is of no importance that respondents here ... sought only declaratory and injunctive relief and not an actual award of benefits as well." *Id.*

The Sixth Circuit has applied the *Ringer* analysis to a variety of challenges under both Part A and Part B of the Medicare program and has rejected jurisdictional claims under 28 U.S.C. §§ 1331 and 1346 as barred by section 405(h). *Manakee Professional Medical Transfer Service, Inc. v. Shalala,* 71 F.3d 574, 579 (6th Cir.1995) (providers of nonemergency health transportation required to exhaust administrative remedies per § 405(g) as sole avenue for judicial review); *Farkas v. Blue Cross & Blue Shield of Michigan,* 24 F.3d 853 (6th Cir.1994) (physician's failure to exhaust administrative remedies barred judicial review by court); [9] *Livingston Care Cen-*

---

9. The Sixth Circuit also held in *Farkas* that a line of cases permitting different treatment of Part A

and Part B Medicare claims, and adjudication of Part B methodology claim's without administra-

*ter, Inc. v. United States,* 934 F.2d 719, 722 (6th Cir.) (claim for consequential damages resulting from nursing home's alleged wrongful termination from Medicare program arose under Medicare Act), *cert. denied,* 502 U.S. 1003, 112 S.Ct. 636, 116 L.Ed.2d 654 (1991); *Westchester Management Corp. v. U.S. Dep't of HHS,* 948 F.2d 279, 282 (6th Cir.1991) (judicial review of reimbursement denial of facility rental expenses arose under Medicare Act, not the APA or Due Process Clause), *cert. denied,* 504 U.S. 909, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992); *Good Samaritan Medical Center v. Secretary of Health and Human Services,* 776 F.2d 594, 599 (6th Cir. 1985) (plaintiffs constitutional challenge to different reimbursement rates for rural and urban medical care providers arose under Medicare Act barring § 1331 jurisdiction).

The Seventh Circuit has ruled in a similar fashion. *Homewood Professional Care Center, Ltd. v. Heckler,* 764 F.2d 1242, 1248–49 (7th Cir.1985) (action filed under section 1331 alleging constitutional violations and seeking declaratory judgment, mandamus, injunctive relief, and damages "arose under" Medicare Act); *Bodimetric Health Services, Inc. v. Aetna Life & Cas.,* 903 F.2d 480, 483, 488 (7th Cir.) (allegations that fiscal intermediary engaged in fraud and other state law torts "arose under" the Medicare Act), *cert. denied,* 498 U.S. 1012, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990).

> In *Bodimetric,* the Seventh Circuit stated: If dissatisfied claimants could avoid the preclusive effect of section 405(h) by simply bringing suit against the fiscal intermediary instead of the Secretary, the Medicare Act's goals of efficiency and finality would be substantially undermined.... [W]e see no reason to allow claimants to proceed against private agencies when they clearly cannot proceed against federal agencies.

903 F.2d at 487–88. It thus concluded that "suits against fiscal intermediaries are governed by the terms of section 405(h)." *Id.* at 488.

█ It is clear that defendants' counterclaim "arises under" the Medicare Act. De-

fendants' counterclaim goes to the issue of whether the psychotherapy services they billed to Medicare were properly paid, rather than as the United States maintains were false claims. While some of defendants' claims may implicate the False Claims Act, they all rely on the Medicare Act, its attendant regulations, and the bureaucratic scheme.

This Court finds the counterclaim is "inextricably intertwined" with a claim for benefits payments and "arises under" the Medicare Act. The declaratory relief the defendants seek would hold that the way they billed Medicare and the reimbursement they received is correct, or that they are entitled to additional reimbursement. The upshot is the United States would have no basis for proceeding against them for recovery of false claims.

Waiver of administrative exhaustion would permit parties to litigate in federal court without fully complying with the statutory and administrative scheme the Medicare Act establishes.

█ There are three factors to consider in deciding whether to waive the administrative exhaustion requirement: "(1) are the claims at issue collateral to the underlying decision as to eligibility for entitlements; (2) would claimants be irreparably harmed were the exhaustion requirement enforced against them; and (3) would exhaustion of administrative remedies be futile." *Manakee,* 71 F.3d at 580 (citations omitted).

█ In the present case, defendants already have been paid on the claims at issue. Defendants' counterclaim seeks not only the avoidance of false claims liability for those claims, but also additional reimbursement for some of them. However, administrative procedures exist whereby physicians may seek additional reimbursement and further appeal, if necessary.

█ Moreover, defendants' administrative and constitutional challenges are not wholly collateral to a claim for benefits. These claims are no different from those constitutional, contractual and damage claims found in the cases cited elsewhere within this opin-

tive review, is no longer good law. 24 F.3d at 860.

ion. The fact that the administrative tribunal might not have authority to grant all the relief requested does not excuse exhaustion. *Good Samaritan,* 776 F.2d at 599 (even if constitutional claim is raised, exhaustion is still required to ensure procedural record).

There is no irreparable harm in this case, as defendants already have been paid on the claims at issue. Requiring administrative exhaustion would not be futile. Exhaustion provides an opportunity to present the issues administratively in the context of specific claims and to develop the underlying facts to ensure a record for judicial review. Further, the government's brief informs that administrative law judges are not bound by the manual provisions, bulletins, and newsletters of which defendants complain.[10] There is nothing in the record before the Court to seriously suggest the Medicare Act's exhaustion requirement should be waived to permit this counterclaim.

As in *Ringer* and *Westchester,* allegations of administrative law irregularities does not mean such claims cannot be considered as "arising under" the Medicare Act. Nor does the constitutional void for vagueness challenge exempt defendants from the purview of § 405(h). Further, defendants' third-party beneficiary, indemnification, and recoupment claims, as in *Bodimetric,* are subject to the limitations and bar of § 405(h).

10. Citing 42 C.F.R. § 401.108.

11. The Tucker Act in § 1346(a)(2) gives district courts concurrent jurisdiction with the United States Court of Federal Claims over certain civil actions against the United States involving less than $10,000. This is a waiver of sovereign immunity for those actions specified in the Act. However, the Tucker Act has been held to confer jurisdiction on district courts only in actions for money judgments and not to grant injunctive or declaratory relief. *Lee v. Thornton,* 420 U.S. 139, 140, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975); *Seiden v. United States,* 537 F.2d 867, 870 (6th Cir. 1976). Section 1346(a)(2) might provide a waiver of sovereign immunity as to those counterclaims which seek monetary relief, if not for the judicial review statute in the Medicare Act. The Tucker Act does not waive sovereign immunity as to those counterclaims for declaratory, mandamus or injunctive relief.

As additional support for its ruling on this counterclaim, the Court notes the rule that any

Defendants' counterclaim arises under the Medicare Act, and defendants' assertion of jurisdiction based on 28 U.S.C. §§ 1331 or 1346 [11] is barred by 42 U.S.C. § 405(h).

 Further, the Mandamus Act and the Declaratory Judgment Act do not waive the federal government's sovereign immunity in mandamus or declaratory judgment actions. *Thomas,* 662 F.Supp. at 524.

### V

 Despite Rule 13(d) and the sovereign immunity doctrine, a party defending against the United States may assert a recoupment claim arising out of the same transaction or occurrence as the original claim so as to reduce the government's recovery. 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1427 (2d ed.1990).

However, defendants' recoupment claim (count 5 of counterclaim) would completely circumvent the detailed administrative process in place to address these matters. The Supreme Court made clear in a social security disability case that where Congress established an exclusive remedy in a comprehensive statutory scheme providing for judicial review after exhaustion of administrative remedies, money damages against individuals were not available. *Schweiker v. Chilicky,* 487 U.S. 412, 424, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988)

claims brought under the Tucker Act against the United States cannot be asserted by way of a counterclaim, only by an original proceeding in the manner contemplated by § 1346(a)(2). *United States v. Nipissing Mines Co.,* 206 F. 431, 434 (2d Cir.1913), *cert. dismissed,* 234 U.S. 765, 34 S.Ct. 673, 58 L.Ed. 1582 (1914). *See also, United States v. Shaw,* 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940). (*But see, United States v. Martin,* 267 F.2d 764, 769–70 (10th Cir.1959); *Thompson v. United States,* 250 F.2d 43, 44 (4th Cir.1957); *United States v. Silverton,* 200 F.2d 824, 827 (1st Cir.1952) (permitting counterclaim where defendant could have brought original action)). The government argues this is especially true where the federal government bases its complaint primarily on a specific statutory scheme, such as the Food, Drug and Cosmetic Act or the Medicare Act. *See, United States v. Articles of Food ... Clover Club Potato Chips,* 67 F.R.D. 419, 422–24 (D.Idaho 1975).

In this case, Medicare's detailed administrative process is the exclusive mechanism for defendants to recover for any underbillings to the carriers.

## VI

The courts and Congress have been clear that the matters raised in the defendants' counterclaim cannot be considered as an original lawsuit in federal court outside the jurisdictional scheme of the Medicare Act. This Court will not permit the effort under the guise of an counterclaim and third-party complaint. The Court will grant the plaintiff government and third-party defendants' motion to dismiss the counterclaim without prejudice. The parties will proceed to trial on the remaining issues.

IT IS SO ORDERED.