The AMALGAMATED SUGAR COMPANY and U & I Incorporated, Plaintiffs-Appellees,

v.

Bob BERGLAND, Secretary of Agriculture, Defendant-Appellant.

No. 80–1097.

United States Court of Appeals, Tenth Circuit.

Argued July 13, 1981.

Decided Nov. 24, 1981.

---

James W. Freed, Salt Lake City, Utah (Judith Mitchell Billings, Salt Lake City, Utah, with him on the brief), of Ray, Quinney & Nebeker, Salt Lake City, Utah, for plaintiffs-appellees.

Raymond W. Fullerton, Director, Litigation Division, Washington, D. C. (James Michael Kelly, Asst. Gen. Counsel, and Terrence G. Jackson and James R. Walczak, Office of the Gen. Counsel, U. S. Dept. of Agriculture, Washington, D. C., with him on the brief), for defendant-appellant.

Before SETH, Chief Judge, McWILLIAMS, Circuit Judge, and BROWN,* District Judge.

McWILLIAMS, Circuit Judge.

The Amalgamated Sugar Company and U. & I. Incorporated, two Utah sugar beet processors,[1] brought separate actions against Bob Bergland, Secretary of the United States Department of Agriculture (USDA), in the United States District Court for the District of Utah. Both complaints were prepared by the same attorney, and for practical purposes are identical both as to form and substance. Each complaint challenged a USDA determination that certain sugar belonging to the sugar companies was "ineligible" for loans under the 1977 USDA price support program for sugar cane and sugar beets.

The sugar here in question initially was considered eligible for participation in the 1977 USDA Loan Program, and loans were issued accordingly. In the summer of 1978, however, the Department discovered, to its satisfaction, that both companies had violated USDA regulations by changing their sugar inventory accounting methods in mid-1977. Accordingly, in August of 1978, the USDA sent letters to the companies demanding redemption of the loans prior to maturity. On January 24, 1979, the USDA's Agricultural Stabilization and Conservation Service issued a final agency decision affirming the finding of ineligibility based upon violation of regulation accounting methods. Four days later, the plaintiffs filed these actions in district court seeking a declaratory judgment that the sugar in question was eligible for government-sponsored loans under the Food and Agriculture Act of 1977, 7 U.S.C. § 1446(f) (Supp. I 1977), and the regulations issued thereunder. They also sought an injunction to prevent the Secretary from recalling the loans prior to their maturity dates and an order requiring the Secretary to extend the maturity dates on the loans. Jurisdiction was based on 28 U.S.C. § 2201 (Supp. II 1978) and 28 U.S.C. § 1331 (1976).

By agreement, the two cases were consolidated. The trial court, after hearing, entered a preliminary injunction which enjoined the Secretary and his agents from demanding repayment of any loan which was involved in the proceedings. The Secretary filed an answer, and counterclaim. The latter was dismissed on motion of the sugar companies. After discovery, the sugar companies and the Secretary filed cross motions for summary judgment. The trial court granted the motion of the sugar companies and entered judgment in their favor. The Secretary appeals.

Some background information is essential to an understanding of this matter. The loan phase of the 1977 price support program was promulgated by the USDA in November 1977, in response to congressional enactment of the Food and Agricultural Act of 1977. Pub.L.No. 95–113, 91 Stat. 949. Section 902 of that Act required the Secretary to support the 1977 and 1978 crops of sugar cane and sugar beets by means of a Loan Program, rather than through the Payment Program which had been in effect for the 1977 crop prior to that time.[2] The Act authorized continuation of the Payment Program until regulations implementing the Loan Program could

---

* Honorable Wesley E. Brown, United States District Judge, for the District of Kansas, sitting by designation.

1. Each is a corporation which processes raw sugar beets into refined sugar.

2. Proposed rules implementing the Payment Program were issued by the Secretary in June of 1977, to counteract the adverse financial effects of a recent dramatic drop in the world price of sugar. 42 Fed.Reg. 30409 (June 14, 1977). Establishment of the Payment Program was authorized by Section 301 of the Agricultural Act of 1949 (7 U.S.C. § 1447), which permits the Secretary to support a number of commodities, including sugar cane and sugar beets. The Payment Program was revised and the final rules were published on October 7, 1977. 42 Fed.Reg. 545556; codified as 7 C.F.R. §§ 1435.1–1435.14 (1978). Shortly after the revised program was announced, Congress enacted the Food and Agriculture Act of 1977 which required that government support of the sugar crop be accomplished by loans rather than payments.

be adopted. Thus, Congress ensured that the entire 1977 sugar crop could receive federal support.

Under the Loan Program, sugar processors were able to obtain eleven-month loans from the USDA at a set sum for each pound of 1977 sugar held by the processor. The processor could redeem the loan either by paying it off, or by forfeiting the sugar if the processor could not sell the sugar at the loan rate. The price of sugar eventually rose above the loan rate. However, in the fall of 1978, when some of the loans began to mature, it appeared that some cane processors might be forced to forfeit substantial quantities of sugar if the maturity dates of the loans were not extended. Accordingly, the USDA issued new regulations, published on November 29, 1978, which established an Extended Loan Program for 1977 sugar. 7 C.F.R. §§ 1435.45–1435.54 (1979). The extended loan regulations allowed processors to apply for extension dates for their 1977 loans. In addition, the regulations provided that processors could receive storage payments for each day that the collateral sugar was held beyond the original maturity date of the loan. 7 C.F.R. § 1435.49(a) (1979). The storage rate for refined beet sugar was approximately 24 cents per day per 1000 pounds. 7 C.F.R. § 1435.49(b) (1979).

This dispute between the government and the sugar companies arose when government auditors discovered that the companies had switched accounting methods when they changed from the Payment Program to the Loan Program. At the outset of the Payment Program, processors were permitted to select either the "first-in first-out" or "last-in first-out" method of inventory accounting for the purpose of identifying sugar from the 1977 crop.[3] 7 C.F.R. § 1435.5(b) (1978). The regulation explicitly provided, however, that once a processor chose an inventory accounting method for identifying 1977 sugar, no change could be made.[4] Both plaintiffs used the "last-in first-out" method for the Payment Program, and switched to the "first-in first-out" method when the Loan Program became effective.

The government maintains that the switch violated 7 C.F.R. § 1435.5(b) of the price support regulations, and permitted the companies to obtain government loans for 294 million pounds of ineligible sugar. The companies contend that the switch in accounting methods was not prohibited by 7 C.F.R. § 1435.5(b), which they claim applied only to the 1977 Payment Program and not to the 1977 Loan Program.

The district court adopted the companies' interpretation of the regulations, and declared the 294 million pounds of sugar eligible for the 1977 Loan Program. Because we have concluded that the district court was without jurisdiction to consider the eligibility question at the time its judgment was entered, we do not reach the issue of the propriety of the USDA determination that a portion of plaintiffs' sugar was ineligible for the 1977 Loan Program.

Although the matter was mentioned in oral argument before the trial court, it does not appear from the record that the jurisdictional question occupied the same prominence there as it does here. In this Court, however, the first ground for reversal urged by the Secretary is that the trial court lacked jurisdiction to decide the case at the time it entered summary judgment in favor of the sugar companies. The Secretary bases this argument on the fact that several months prior to the entry of summary judgment, the companies repaid the

---

3. Because sugar is a fungible item, and because the companies had on hand both pre-1977 sugar and 1977 sugar at the time the Payment Program was instituted, adoption of some method of accounting was necessary in order to identify the 1977 sugar.

4. 7 C.F.R. § 1435.5(b) provided in part:

The processor may select either the "first-in first-out" or the "last-in first-out" method of inventory accounting for the purpose of identifying sugar of the 1977 crop. Once a method of inventory accounting has been selected by the processor, no change may be made therein.

loans involved.[5] Repayment of the loans, argues the Secretary, obviated any need for injunctive relief, either to prohibit the Secretary from recalling the loans or to require him to extend the loans. Thus, the Secretary contends, the only remaining justiciable claim arising out of the 1978 determination of ineligibility concerns collection by the plaintiffs of storage payments available under the 1977 Extended Loan Program. No claim for money was made in the present proceeding, and the Secretary asserts that such a claim could only be brought in the United States Court of Claims.

The sugar companies agree that they have made no claim for storage fees in the present proceeding. However, they concede that their ultimate goal is to recover storage payments in the amount of $700,000 from the USDA. In this regard, counsel for the plaintiffs frankly advised the court below that a declaratory judgment that the sugar in question was eligible for the 1977 Loan Program was but the first step in their effort to recover storage payments which they believed were due them under the 1977 Extended Loan Program. Apparently, it is plaintiffs' position that they are entitled to a declaratory judgment that their sugar was "eligible" for government loans, and, then, armed with such a declaration, they will go elsewhere, possibly back to the Secretary first, and then, in the event of an adverse ruling by the Secretary, to the United States Court of Claims, to collect some $700,000 in storage payments.[6]

■ Certain fundamental rules regarding jurisdiction are not in dispute. First, the jurisdiction of a court over subject matter may be raised at any point in the proceeding. *See, e. g., American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 16–19, 71 S.Ct. 534, 541–43, 95 L.Ed. 702 (1950); *Citizens*

*Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981); *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 192 (5th Cir. 1980). Second, jurisdiction cannot be conferred by agreement of the parties. *First State Bank and Trust Co. v. Sand Springs State Bank*, 528 F.2d 350, 354 (10th Cir. 1976). And a court can determine the merits of a controversy only if jurisdiction exists at all stages of the proceeding. *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *Allen v. Likins*, 517 F.2d 532, 534 (8th Cir. 1975). *See also Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969).

The plaintiffs assert in their complaints that the jurisdiction of the district court is based on 28 U.S.C. § 2201 (Supp. II 1978) (declaratory judgment) and 28 U.S.C. § 1331 (federal question). 28 U.S.C. § 2201 provides, in part, that:

§ 2201. Creation of remedy

*In a case of actual controversy within its jurisdiction,* ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. (emphasis added).

■ It is settled that 28 U.S.C. § 2201 does not itself confer jurisdiction on a federal court where none otherwise exists. That statute was adopted by Congress to enlarge the range of remedies available in federal court, and does not extend subject matter jurisdiction to cases in which the court has no independent basis for jurisdiction. *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950); *Monks v. Hetherington*, 573

---

**5.** The loans were repaid pursuant to a stipulation between the parties, which provided, *inter alia*: (1) that plaintiffs' sugar would have been deemed eligible by the USDA as collateral for the Loan Program and the 1977 Extended Loan Program but for the switch in accounting methods; and (2) that if the plaintiffs prevail in the subject litigation, the Secretary will pay to the

plaintiffs all benefits accruing under the 1977 Loan Program and the 1977 Extended Loan Program.

**6.** The USDA estimated that the storage claims for Amalgamated would amount to $448,000 and $234,000 for U & I.

F.2d 1164, 1167 (10th Cir. 1978); *Chandler v. O'Bryan*, 445 F.2d 1045, 1054 (10th Cir. 1971), *cert. denied*, 405 U.S. 964, 92 S.Ct. 1176, 31 L.Ed.2d 241 (1972).

The other statute relied on by the plaintiffs to establish jurisdiction is 28 U.S.C. § 1331, which provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[7] 28 U.S.C. § 1331, however, does not confer jurisdiction on the district court to determine matters which fail to meet the case or controversy requirements of Article III. The loans having been repaid at the time the district court granted plaintiffs' motion for summary judgment, plaintiffs' potential claim for $700,000 in storage payments is, so far as we can tell, the only actual controversy remaining between the parties.

■ It has long been established that the United States may not be sued without its consent. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1975); *Dry Creek Lodge, Inc. v. United States*, 515 F.2d 926, 930 (10th Cir. 1975). Under the Tucker Act, the United States has waived its sovereign immunity with respect to certain claims for money damages by conferring jurisdiction on the Court of Claims, and in certain circumstances, on the district courts, to hear those cases. Act of March 3, 1887, 24 Stat. 505; codified as 28 U.S.C. §§ 1346(a) and 1491. *See* 424 U.S. at 398–99, 96 S.Ct. at 953–54. Thus, the companies' potential claim against the Secretary for storage payments is actionable only if it is brought pursuant to the Tucker Act. *Clark v. United States*, 596 F.2d 252, 253–54 (7th Cir. 1979); *Cook v. Arentzen*, 582 F.2d 870, 873–75 (4th Cir. 1978).

28 U.S.C. § 1491 (Supp. II 1978) provides that:

The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, *or any regulation of an executive department*, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. (emphasis added).

■ United States district courts have concurrent jurisdiction with the Court of Claims in suits against the United States where the amount in controversy does not exceed $10,000. 28 U.S.C. § 1346 (Supp. II 1978), provides in pertinent part:

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

. . . .

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort,

. . . .

Although, under the above-mentioned statutes, the Court of Claims and the district courts have concurrent jurisdiction of claims against the United States where the amount in controversy is less than $10,000, the Court of Claims has exclusive jurisdiction where the amount in controversy exceeds $10,000. *Walker Field, Colo., Public Airport Authority v. Adams*, 606 F.2d 290, 294 (10th Cir. 1979); *International Engineering Co., Division of A–T–O, Inc. v. Richardson*, 512 F.2d 573, 577 (D.C.Cir. 1975), *cert. denied*, 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976).

■ The plaintiffs' basic position on the jurisdictional issue is that they have not made any claim for a money judgment against the United States in the present proceeding, but sought *only* a declaratory judgment. This argument is unavailing. Once the loans were repaid, the only actual controversy remaining concerns the availability to the plaintiffs of storage payments provided in the 1977 Extended Loan Pro-

7. As amended by Pub.L.No. 96–486, § 2(a), 94 Stat. 2369 (1980).

gram.[8] For reasons above-stated, that controversy is not within the jurisdiction of the federal district court under either 28 U.S.C. § 2201 or § 1331. It is well-settled that the jurisdiction of the Court of Claims cannot be evaded by framing a complaint to seek only injunctive, mandatory, or declaratory relief against governmental officials. *See S. J. Groves & Sons v. United States*, 495 F.Supp. 201, 206–10 (D.Colo.1980) and the numerous authorities cited therein. *See also, Mathis v. Laird*, 483 F.2d 943 (9th Cir. 1973); *Carter v. Seamans*, 411 F.2d 767, 771 (5th Cir. 1969) (per curiam), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970).

We conclude, therefore, that the trial court lacked jurisdiction to enter summary judgment for the plaintiffs. Accordingly, the judgment is set aside, and the matter is remanded with directions to dismiss the action for lack of jurisdiction.

8. The question of plaintiffs' eligibility under subsequent loan programs is not at issue in this case. The USDA did not promulgate a specific accounting rule for either the 1978 or 1979 Loan Programs.