**LOGAN CANYON CATTLE ASSOC., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 95–90C.**

United States Court of Federal Claims.

Oct. 10, 1995.

---

Glen E. Davies, Salt Lake City, Utah, for plaintiffs.

John P. Sholar, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen, and Kirk T. Manhardt, Washington, DC, for defendant. Jeffrey Eisenberg, United States Department of Agriculture, of counsel.

## OPINION

BRUGGINK, Judge.

This action, brought pursuant to the Tucker Act, 28 U.S.C. § 1491 (1988), and the Declaratory Judgment Act, 28 U.S.C. § 2201, is before the court on defendant's motion to dismiss. The motion is asserted under both RCFC 12(b)(1), lack of subject matter jurisdiction, and RCFC 12(b)(4), failure to state a claim upon which relief can be granted. Oral argument is deemed unnecessary. After

considering the parties' briefing, the court concludes that it lacks subject matter jurisdiction over plaintiffs' claim. Consequently, defendant's motion to dismiss is granted pursuant to RCFC 12(b)(1).

### FACTUAL BACKGROUND [1]

Plaintiffs, the Logan Canyon Cattle Association ("LCCA") and Harold Selman, Inc., ("Selman"), are holders of ten-year grazing permits issued by the United States Forest Service, United States Department of Agriculture ("Forest Service"). These permits entitle plaintiffs to grazing rights on allotments located in the Wasatch–Cache National Forest, in Logan Canyon, Utah. While the LCCA's permit authorizes the grazing of cattle on the Logan Canyon allotment, Selman's permit authorizes the grazing of sheep on the adjacent Blind Hollow allotment.

Sometime in 1964–65, a boundary line fence was constructed between the Logan Canyon and Blind Hollow allotments. Approximately two years later, on April 19, 1967, the LCCA, Selman, and the Forest Service entered into the Range Improvement Agreement ("Agreement"), which included provisions concerning the reconstruction and maintenance of the boundary line fence. According to plaintiffs, the Agreement states that with regard to the fence their only duty is one of maintenance. If the fence requires reconstruction or rehabilitation, however, the Forest Service is responsible.

By decision of the Forest Service dated June 16, 1990, a period of common use was initiated between the Logan Canyon and Blind Hollow allotments. However, because of adverse impact upon riparian areas, failure to achieve the regrowth requirement, and limited funds, Logan District Ranger William L. Thompson terminated the common use experiment on January 22, 1993.

On appeal, Ranger Thompson's decision terminating common use was affirmed by the Forest Supervisor.[2] In her May 28, 1993 decision, the Forest Supervisor explained that in light of her holding the boundary line fence would have to be reconstructed. To this end, she stated that "the Forest Service would provide the material and the permittees would do the work."

Subsequent to the Forest Supervisor's decision, Ranger Thompson informed plaintiffs that the fence reconstruction was solely their responsibility. According to his correspondence of June 22, 1993, Ranger Thompson explained to plaintiffs that:

> ... it seems apparent that the Forest Service has met its responsibility concerning the fence as outlined in the 1967 agreement. Also, because the Forest Service reconstructed the total fence in 1984 and did periodic reconstruction of portions of the fence prior to and since then, the permittee now have complete responsibility for maintenance and/or reconstruction of the fence. . . .

Plaintiffs attempted to appeal Ranger Thompson's letter regarding the fence reconstruction. However, the Forest Supervisor informed them that Ranger Thompson's letter was not an appealable decision. According to the Forest Supervisor's September 21, 1993 correspondence to plaintiffs:

> ... I do not recognize [Ranger Thompson's] letter as being a decision that is appealable. Responsibility for construction of the fence was outlined in ... my May 28 decision letter, and is not an appealable decision.

> My decision letter of May 28 requires the responsibility of rebuilding the fence be shared between the Forest Service and the permittee. It required that we provide materials while you provide the labor to build the fence. In his decision letter of July 22, the Regional Forester upheld my decision.

On October 18, 1993, plaintiffs again appealed the decision of the Forest Supervisor to the Regional Forester. By letter of No-

---

1. The facts are drawn from the complaint, filed on February 6, 1995, and from certain items of public record attached to the motion and response. The court addresses the motion exclusively under Rule 12(b)(1), hence it is unnecessary to convert it to one pursuant to Rule 56.

2. On June 8, 1993, the Forest Supervisor's decision was appealed to the Regional Forester. On July 22, 1993, the Regional Forester's office issued a final decision affirming the Forest Supervisor.

vember 19, 1993, the Regional Forester refused to accept plaintiff's appeal. According to the Regional Forester: "In her September 21 letter, Supervisor Giannettino determined that the previous decision of District Ranger Thompson outlining the responsibility for construction of the fence was not an appealable decision. We agree with that determination; therefore, we cannot accept your appeal."

On April 19, 1994, plaintiffs filed a complaint in the United States District Court for the Northern District of Utah. The first cause of action involved a challenge to the actions of the Forest Service under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, 702, 704, 706 (1988). In the second cause of action of that litigation, plaintiffs sought a declaratory judgment from the district court that the Range Improvement Agreement was still in full force and effect and binding on the Forest Service.

The Government filed a motion for summary judgment in the district court action on December 9, 1994. As to the second claim for relief, the Government argued that the district court was required to dismiss because the claim "falls within the exclusive jurisdiction of the Court of Federal Claims [pursuant to] 28 U.S.C. §§ 1346(a)(2) and 1491." On January 30, 1995, plaintiffs voluntarily dismissed their second cause of action in the district court action in order to file that claim here. The balance of the complaint remains pending.

## DISCUSSION

■ Insofar as relevant here, the Tucker Act provides this court with its primary jurisdictional grant. It permits a claim that is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Plaintiffs ask this court to declare that the Range Improvement Agreement remains in full force and effect and to order the Government to perform its responsibilities pursuant to that Agreement (i.e., reconstruction of the boundary line fence). This is a type of remedy, however, that historically has not been available in this forum under the Tucker Act: "This court, however, does not have general equitable jurisdiction in matters of contracts. The jurisdiction of the United States Court of Federal Claims encompasses only money claims against the United States." *Nicholson v. United States,* 29 Fed.Cl. 180, 185 (1993) (citing *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)). Assuming for the sake of argument that the Agreement is enforceable as a contract,[3] the court nevertheless lacks subject matter jurisdiction over this suit because the claim is anticipatory. It is not for money, but for specific performance.[4]

■ Plaintiffs cite a long line of Tenth Circuit opinions for the proposition that the exclusive jurisdiction[5] of the Court of Federal Claims cannot be avoided by framing a complaint to appear to seek only injunctive, mandatory, or declaratory relief, when, in reality, the thrust of the suit is one seeking money from the United States. *Eagle–Picher Indus. v. United States,* 901 F.2d 1530, 1532–33 (10th Cir.1990); *Rogers v. Ink,* 766

---

3. "Under the Tucker Act, the Government is not liable in contracts for 'every agreement, understanding, or compact which can semantically be stated in terms of offer or acceptance or meeting of the minds.'" *Drakes v. United States,* 28 Fed. Cl. 190, 193 (1993) (quoting *Kania v. United States,* 650 F.2d 264, 268 (Ct.Cl.1981)).

4. This court does not have jurisdiction over claims for specific performance,. *Blackwell v. United States,* 23 Cl.Ct. 746, 750 (1991), and generally lacks authority to grant requests for declaratory judgments. *Massachusetts Bay Transp. Auth. v. United States,* 21 Cl.Ct. 252, 262 (1990). The jurisdiction of this court to entertain an action is dependent upon a claim for money presently due. *Com. of Kentucky ex rel. Cabinet for Human Res. v. United States,* 16 Cl.Ct. 755, 760 (1989).

5. For claims which exceed $10,000, the Tucker Act vests exclusive jurisdiction in this court. *Chula Vista City Sch. Dist. v. Bennett,* 824 F.2d 1573, 1579 (Fed.Cir.1987). For claims which do not exceed $10,000, the district courts have concurrent jurisdiction. *Id.*

F.2d 430, 434–35 (10th Cir.1985); *United States v. City of Kansas City, Kansas,* 761 F.2d 605, 608–09 (10th Cir.1985); *New Mexico v. Regan,* 745 F.2d 1318, 1322 (10th Cir. 1984); *Amalgamated Sugar Co. v. Bergland,* 664 F.2d 818, 824 (10th Cir.1981); *Alamo Navajo Sch. Bd., Inc. v. Andrus,* 664 F.2d 229, 233 (10th Cir.1981). According to these decisions, "the test for determining if a case belongs in the Claims Court is whether or not the prime objective or essential purpose of the complaining party is to obtain money from the federal government." *Eagle–Picher Indus.,* 901 F.2d at 1532; *see also Rogers,* 766 F.2d at 434; *Regan,* 745 F.2d at 1322.

Plaintiffs' reliance on the Tenth Circuit cases cited above is misplaced. Each of those cases is distinguishable from plaintiffs' situation because each one involved an underlying monetary claim. In *Eagle–Picher,* the contractor sought to enjoin the suspension and resolicitation of a contract that it had been awarded by an agent of the Department of Energy. Although it sought only an injunction, the court held that if the contractor were to prevail on the merits of its claim it would be indirectly entitled to monetary relief because the practical effect of such an injunction would be to force the Government to abide by the contract. 901 F.2d at 1533. In contrast, if plaintiffs were to prevail on the merits of their claim before this court, they would not be entitled to any monetary relief. Rather, all that they would be entitled to is a court order forcing the Forest Service to satisfy its obligations under the Range Improvement Agreement by rebuilding the boundary line fence.

Similarly, in *Rogers,* in addition to requesting declaratory and injunctive relief, the plaintiffs sought an order compelling the defendants to provide funding for their commu-

nity action plan. 766 F.2d at 432. No such order for monetary relief is sought by the plaintiffs in the present controversy.[6] In fact, monetary damages are not yet possible in this controversy because plaintiffs did not reconstruct the fence.

■ Plaintiffs' reliance on the Declaratory Judgment Act, 28 U.S.C. § 2201, is also misplaced. As explained by the Supreme Court, "[i]n the absence of an express grant of jurisdiction from Congress, we decline to assume that the Court of Claims has been given the authority to issue declaratory judgments." *King,* 395 U.S. at 3–5, 89 S.Ct. at 1502–03. By its terms, the Declaratory Judgment Act would not afford a remedy in this case. Only "[i]n a case of actual controversy within its jurisdiction ... [may a] court of the United States ... declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Plaintiffs' claim for specific performance is not an "actual controversy within [this court's] jurisdiction."

### CONCLUSION

■ The motion to dismiss must be granted. The court is sympathetic with plaintiffs' frustration in obtaining review. The Government's motion for summary judgment in the district court was wrong in directing plaintiffs to this forum. Nevertheless, the court deems it inadvisable to transfer the proceeding to the district court. First, such a transfer presumes jurisdiction in the transferee court. 28 U.S.C. § 1631. The Government's motion for summary judgment was, in all likelihood, half right. It is far from clear that the district court would be able to entertain a claim for specific performance of a contract.[7] The district court, moreover, re-

---

**6.** The other four circuit court opinions cited by plaintiffs can be similarly distinguished. In each case the plaintiff sought relief in the form of a monetary award. *City of Kansas City,* 761 F.2d at 606, 608 (the city's counterclaim sought a judgment of $2,151,750 against the United States); *Regan,* 745 F.2d at 1319 (the State of New Mexico brought the action against the Secretary of the Treasury seeking to recover a percentage of federal royalties paid to the Government in the form of the windfall profits tax); *Amalgamated Sugar Co.,* 664 F.2d at 822 (plaintiff conceded that the ultimate goal of its claim

was to recover storage payments in the amount of $700,000 from the United States Department of Agriculture); *Alamo Navajo School Bd., Inc.,* 664 F.2d at 231 (board brought action against the United States Bureau of Indian Affairs to compel the Bureau to provide it with $134,833 of contingency funds).

**7.** *See, e.g., Coggeshall Dev. Corp. v. Diamond,* 884 F.2d 1, 3 (1st Cir.1989) (citing *Florida Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 689, 102 S.Ct. 3304, 3317, 73 L.Ed.2d 1057 (1982));

**170**

tains jurisdiction over an APA claim based on the same facts. In the view of this court, the real gravamen of the dispute here is a challenge to final administrative action—a challenge that is not fundamentally different from what the district court still has before it. An APA action may be the best, indeed the only, vehicle for ventilating the claim and obtaining relief. Finally, if the claim here is indeed within the district court's jurisdiction, the limitations period does not appear to have run.

The Clerk is ordered to dismiss the complaint. No costs.

*Chemung County v. Dole,* 781 F.2d 963, 970 (2d Cir.1986) (district court has no jurisdiction to grant specific relief); *Sea–Land Service, Inc. v. Brown,* 600 F.2d 429, 433 (3d Cir.1979) (plaintiffs couldn't get specific performance on a government contract prior to amendments of the APA either in the district court or the Court of Claims); *Alabama Rural Fire Ins. Co. v. Naylor,* 530 F.2d 1221, 1229–30 (5th Cir.1976) (recognition of the district court's power to grant specific performance would be destruction of the Court of Claims' jurisdiction by implication); *Interna-* *tional Engineering Co. v. Richardson,* 512 F.2d 573, 579–80 (D.C.Cir.1975), *cert. denied,* 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976) (recognition of power to grant specific relief would result in destruction of Court of Claims' jurisdiction by implication; *Coggeshall Dev. Corp. v. United States,* 23 Cl.Ct. 739, 744 n. 7 (1991) ("neither the Claims Court nor federal district courts may order specific performance by the United States of alleged contractual obligations").