Jimmie Ann **TAYLOR**, Ladell Vasicek, Noma Chriss, Martha Cole, and Sara M. McCarthy, Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 97–946 C.

United States Court of Federal Claims.

June 18, 2001.

Genice A.G. Rabe, Dallas, Texas, attorney for plaintiff. Gail M. Dickerson, Dallas, Texas, of counsel.

Patricia M. McCarthy, Washington, D.C., with whom were David W. Ogden, Acting Assistant Attorney General, United States Department of Justice, for defendant.

## OPINION

BUSH, Judge.

In this class action lawsuit, plaintiffs, who are former employees of the Army and Air Force Exchange Service (AAFES), seek on behalf of themselves and others similarly situated, injunctive and declaratory relief, separation pay, damages, and other relief for the United States' alleged violation of the Separation Pay Act, 5 U.S.C. § 5597. Currently pending before the court is the defendant's motion to dismiss, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), for lack of subject matter jurisdiction. For the following reasons, the government's motion to dismiss for lack of subject matter jurisdiction is granted.

## BACKGROUND

### I. Factual Background

In their Second Amended Complaint—Class Action, filed May 8, 1998, plaintiffs seek on behalf of themselves and others similarly situated, injunctive and declaratory re-

**1.** The Army and Air Force Exchange Service is a joint command of the Army and Air Force, and falls under the jurisdiction of the Chiefs of Staff of the Army and Air Force. 32 C.F.R. § 842.127. It provides exchange and motion picture services to authorized patrons. *Id.* The AAFES is a nonappropriated fund instrumentality of the United States that does not receive its funding by congressional appropriation. *See* 10 U.S.C. §§ 4779(c), 9779(c). Like other military post exchanges, the AAFES is intended " 'to provide convenient and reliable sources where soldiers

lief, separation pay, attorney fees, costs, interest, and all other appropriate relief and damages for the United States' alleged violation of the Separation Pay Act, 5 U.S.C. § 5597.

Pursuant to 5 U.S.C. § 5597, the Secretary of Defense was authorized to "establish a program under which separation pay may be offered to encourage eligible employees to separate from service voluntarily (whether by retirement or resignation)." 5 U.S.C. § 5597(b). The Secretary of Defense or persons under him possessing authority on January 13, 1993, approved Army and Air Force Exchange Service [1] separation pay incentives pursuant to instructions attached to the approval. The approval was extended by authorizations of the Secretary of Defense or persons under him with authority dated January 4, 1994, and October 12, 1994, together with further instructions attached to the October 12, 1994, extension.

The incentives provided for separation pay to be paid in a lump sum equal to the lesser of (a) an amount equal to the amount the employee would be entitled to receive under 5 U.S.C. § 5595(c) (1994) if the employee were entitled to payment under such section;[2] or (b) twenty-five thousand dollars ($25,000).

It is plaintiffs' position that defendant promised the separation pay incentives to employees of the AAFES who voluntarily applied for Involuntary Early Retirement between April 17, 1992, and September 30, 1992, and who retired on or after the date the Department of Defense authorized the separation pay incentives for the AAFES, January 13, 1993.

In the complaint, plaintiffs set forth the following information about themselves:

can obtain their ordinary needs at the lowest possible prices.' " *Darden v. United States,* 18 Cl.Ct. 855, 856 n. 1 (1989) (quoting *Standard Oil v. Johnson,* 316 U.S. 481, 484–85, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611 (1942)).

**2.** 5 U.S.C. § 5595 governs the determination of severance pay. The pay amount is a formulaic calculation based on years of service and age of the employee.

Plaintiff Jimmie Ann Taylor was hired by AAFES on July 24, 1967 and remained employed at AAFES headquarters until she retired on or about December 29, 1995. Plaintiff LaDell Vasicek was hired by AAFES in October 1966, and she remained employed at AAFES headquarters until her retirement on or about October 31, 1995. Plaintiff Noma Chriss was hired by AAFES on or about July 25, 1966 and remained employed at AAFES headquarters until her retirement on January 15, 1993. Plaintiff Martha Cole was hired by AAFES in April 1968 and remained employed at AAFES headquarters until her retirement on or about December 31, 1995. Plaintiff Sara M. McCarthy was hired by AAFES on or about February 12, 1968 and remained employed at AAFES headquarters until her retirement on or about March 31, 1996.

On approximately November 15, 1991, AAFES began seeking volunteers for separation in order to avoid involuntary separations required by military drawdowns. All five plaintiffs volunteered for separation under AAFES requests. Noma Chriss requested separation for early retirement on July 20, 1992. Martha Cole, Jimmie Ann Taylor, and LaDell Vasicek timely requested separation for early retirement under AAFES Curtailment of the Workforce # 12. Sara M. McCarthy timely requested separation for early retirement under AAFES Curtailment of the Workforce # 14.

Plaintiffs allege that they separated pursuant to 5 U.S.C. § 5597(d), and the defendant failed to make separation payments required under 5 U.S.C. § 5597 and the instructions issued by the Secretary of Defense or under his authority to non-mobile persons and mobile persons who had not made a Permanent Change of Station (PCS) move under their current obligation of mobility.[3] They further allege that contrary to the requirements of 5 U.S.C. § 5597(d) and instructions from the Secretary of Defense, defendant granted separation pay only to mobile employees who had made a PCS move under their current

obligation of mobility. Plaintiffs received four weeks' severance pay at the time of their retirement and did not receive separation pay.

## II. *Procedural History*

This case was transferred from the United States District Court for the Northern District of Texas, Dallas Division, on December 30, 1997. Plaintiffs filed their Amended Complaint—Class Action on January 27, 1998. Also on this date, plaintiffs filed their motion for class certification and supporting brief. Defendant filed its response to this motion on March 16, 1998. On May 8, 1998, plaintiffs filed their Second Amended Complaint—Class Action.

In a July 30, 1998 opinion, *Jimmie Ann Taylor et al. v. United States*, 41 Fed.Cl. 440 (1998), Judge Tidwell preliminarily certified the class as:

1. All future, present, and former AAFES non-mobile employees, and all future, present, and former AAFES mobile employees who did not make a PCS move under their last obligation of mobility;

2. Who may seek or have sought voluntary separation by resignation or retirement under the Separation Pay Act in order to avoid or minimize the need for involuntary separation due to reduction in force, base closure, reorganization, transfer of function or other similar action within the authorized time period; and

3. Who have not received separation pay; and

4. Who were or are employees as defined by 5 U.S.C. § 5597(c).

*Id.* at 448. Judge Tidwell also found that it was appropriate to utilize an opt-out approach to certification of the class. *Id.* The opinion further provided:

Counsel for plaintiffs and defendant shall generate a final definition of the class and a preliminary list of potential members of the class. Also, the parties shall deter-

---

**3.** AAFES requires all universal annual employees to declare whether they are "mobile" or "non-mobile." *Jimmie Ann Taylor v. William Perry, Secretary Department of Defense, and Army and Air Force Exchange Service,* No. 3–97W2344–BD

slip op. at n. 2 (N.D.Tex. Sept. 24, 1997). A "mobile" employee must agree to accept assignment and transfer to any location throughout the world-wide exchange system. *Id.*

mine the best method to notify members of the class and determine the substance of the notification, including information regarding class members' options. Plaintiffs and defendant shall attempt to come to an agreement regarding definition and notification of the class, and submit a joint proposal to the court by August 31, 1998 for approval before actual notice is sent to the members. If no agreement is reached, the parties shall each make a limited filing of their notification plan by September 15, 1998.

*Id.* at 448–49.

In accordance with this order, defendant filed its Limited Filing Pursuant to Order Dated July 30, 1998 on September 15, 1998. On September 18, 1998, plaintiffs filed their Proposed Class Definition and Notification to Class Members. Defendant filed its Motion to Stay Class Notification Procedures Pending Establishment of Subject Matter Jurisdiction on September 8, 1998. Plaintiffs filed their Brief in Opposition to Defendant's Motion to Stay Class Notification Procedures on September 22, 1998. Defendant filed its Reply to Plaintiffs' Brief in Opposition to Defendant's Motion to Stay Class Notification Procedures on October 5, 1998. On October 14, 1998, Judge Tidwell issued an order granting defendant's Motion to Stay Class Notification Procedures Pending Establishment of Subject Matter Jurisdiction, filed on September 8, 1998. Plaintiffs then filed their Reply to Defendant's Reply to Plaintiffs' Brief in Opposition to Defendant's Motion to Stay Class Notification Procedures on October 15, 1998.

Defendant filed its Motion to Dismiss on September 8, 1998. In support of this motion, it filed a Declaration of Mr. Ronald P. Sanders. Plaintiffs filed their Response to Defendant's Motion to Dismiss on November 6, 1998. The government filed its Reply to Plaintiffs' Response to Defendant's Motion to Dismiss on November 17, 1998. This case was reassigned to the undersigned on January 19, 1999. Pursuant to this court's April 29, 1999 Order, plaintiffs were granted permission to file a Response to Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Dismiss.

The government moved to stay discovery pending establishment of subject matter jurisdiction on April 29, 1999. On May 10, 1999, plaintiffs filed their response to defendant's motion to stay discovery pending establishment of subject matter jurisdiction. The government filed its reply thereto on May 19, 1999. Pursuant to this court's June 21, 1999 Order, plaintiffs were granted permission to file a Response to Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Stay Discovery Pending Establishment of Subject Matter Jurisdiction. Plaintiffs filed this response on June 21, 1999. Pursuant to this court's June 25, 1999 Order, discovery was stayed pending the establishment of subject matter jurisdiction.

Subsequently, the parties were ordered to provide supplemental briefs to the court that included, *inter alia*, a discussion of the impact of *El–Sheikh v. United States*, 177 F.3d 1321 (Fed.Cir.1999), on the jurisdictional issue in the instant case. Accordingly, the government filed its Supplemental Brief Pursuant to Court's Order Dated June 25, 1999 on August 6, 1999. Also on this date, plaintiffs filed their Supplemental Brief Submitted in Accord with the Order of June 25, 1999.

On February 1, 2000, plaintiffs filed their Supplemental Response to Defendant's Motion to Dismiss. Defendant filed a Notice of Supplemental Authority on May 24, 2000. In turn, plaintiffs filed their Comments on Defendant's Alleged Supplemental Authority.

### *DISCUSSION*

**I. *Standard of Review: Motion to Dismiss for Lack of Subject Matter Jurisdiction—RCFC 12(b)(1)***

The government contends in its motion to dismiss that Plaintiff's Second Amended Complaint should be dismissed for lack of jurisdiction. RCFC 12(b)(1), which is identical to Rule 12(b)(1) of the Federal Rules of Civil Procedure, provides for dismissal of a claim for a "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1); RCFC 12(b)(1). If there is no jurisdiction, this court must dismiss the action.

This court's subject matter jurisdiction is strictly construed. *United States v.*

*John C. Grimberg Co., Inc.,* 702 F.2d 1362, 1372–74 (Fed.Cir.1983); *Mega Constr. Co. v. United States,* 29 Fed.Cl. 396, 472 (1993). The non-moving party bears the burden of establishing jurisdiction by a preponderance of the evidence. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir.1993); *Reynolds v. Army & Air Force Exchange Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court will generally consider the facts alleged in the complaint to be true and correct. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). If, however, jurisdictional facts are in dispute, then a court may consider relevant evidence in order to resolve the factual dispute. *Reynolds,* 846 F.2d at 747 (citing *Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 1010, 91 L.Ed. 1209 (1947)). Ambiguities regarding the existence of subject matter jurisdiction should be "resolved against the assumption of jurisdiction." *Mars Inc. v. Kabushiki–Kaisha Nippon Conlux,* 24 F.3d 1368, 1373 (Fed.Cir.1994) (citation omitted). Significantly, a decision to dismiss an action for a lack of jurisdiction does not carry *res judicata* effect, and therefore does not present a bar to a subsequent action on the merits in a court of competent jurisdiction. *Do–Well Machine Shop, Inc. v. United States,* 870 F.2d 637, 640 (Fed.Cir.1989); *Cubic Defense Systems, Inc. v. United States,* 45 Fed.Cl. 239, 248 (1999).

## II. *Merits*

The Tucker Act is the primary statute conferring jurisdiction on this court. The Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

█ It is well established that the Tucker Act is purely jurisdictional and does not cre-ate any substantive rights against the United States for money damages, rather, it merely confers jurisdiction on the Court of Claims whenever the substantive right exists. *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). The substantive right "must be found in some other source of law, such as 'the Constitution, or any Act of Congress, or any regulation of an executive department.'" *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983) (quoting 28 U.S.C. § 1491). In addition, for a statute, regulation, or constitutional provision to confer a substantive right it must "'fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)). *See also Hamlet v. United States,* 63 F.3d 1097, 1101 (Fed.Cir.1995); *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998). In other words, "'a claimant must look beyond the Tucker Act to discover and plead a money-mandating predicate upon which to complete jurisdiction.'" *Westech Corp. v. United States,* 20 Cl.Ct. 745, 748 (1990) (citing *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983)).

Non-appropriated fund instrumentalities (NAFIs) are federal government entities whose "'monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales.'" *El–Sheikh v. United States,* 177 F.3d 1321, 1322 (Fed.Cir.1999) (quoting *Cosme Nieves v. Deshler,* 786 F.2d 445, 446 (1st Cir.1986)). The Army and Air Force Exchange Service, where plaintiffs were employed, is a NAFI. *See supra* n. 1. The 1970 amendment to the Tucker Act pertains to contracts of certain NAFIs and provides: "For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States."

A. **Whether a plaintiff suing a NAFI can maintain a cause of action in this court based upon a statute rather than a contract**

In their Second Amended Complaint, plaintiffs state this court's subject matter jurisdiction over the instant dispute is founded upon 28 U.S.C. §§ 1331, 1346, 1491, 2201, 2202, and 2412. Plaintiffs also allege as a basis for this court's jurisdiction that their action "is a proceeding under the Separation Pay Act, 5 U.S.C. § 5597." Second Amended Complaint at 1. Thus, it is undisputed that this suit is not based on contract.

The government argues in its motion to dismiss that plaintiffs are not able to maintain a cause of action against the Army and Air Force Exchange Service based upon a statute rather than a contract. In support of its position, the government relies upon the Tucker Act which provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

28 U.S.C. § 1491(a)(1).

Relying on language from the Court of Federal Claims' decision in *El–Sheikh v. United States*, 39 Fed.Cl. 1, 6 (1997), the government contends: "[i]t is settled that the Court's 'Tucker Act jurisdiction over claims against the NAFIs listed in section 1491(a)(1) is limited to those claims that allege the existence of an express or implied contract.'" Motion to Dismiss at 6. The government also advances this position in its supplemental brief on the impact of the Federal Circuit's opinion in *El–Sheikh v. United States*, 177 F.3d 1321 (1999), submitted in accord with the order of June 25, 1999, as it contends:

The court of appeals in *El–Sheikh* could not have been clearer: the only claims against the NAFIs enumerated in the Tucker Act with which that Act provides the Court with jurisdiction are contract claims. Plaintiffs' claim against AAFES is not a contract claim, Pl. Opp. at 8, and they assert no jurisdictional basis other than the Tucker Act. *See generally* Am. Compl. There simply is no basis upon which the Court may assert jurisdiction over plaintiffs' claim.

Defendant's Supplemental Brief at 4.

In *El–Sheikh v. United States*, 39 Fed.Cl. 1, 3 (1997), an employee sued the United States under the Fair Labor Standards Act (FLSA) for overtime pay he allegedly was denied during his tenure at the Air Force base officers' club. The Court of Federal Claims held that it lacked subject matter jurisdiction over the claim for two reasons. *El–Sheikh*, 39 Fed.Cl. at 3. The court stated:

This Court finds that the plaintiff's Complaint does not fall within this Court's Tucker Act jurisdiction for two reasons. First, the NAFI involved in this case, the Bolling Officers' Club, is not a NAFI specifically listed in section 1491(a)(1) over which this court has jurisdiction. Second, even if the NAFI in this case was listed in section 1491(a)(1), actions against those enumerated NAFIs can only be based on an express or implied contract, and not arising under the United States Constitution, a federal statute, or federal regulation. In this case, the plaintiff alleges a violation of a statute, the FLSA, and not a breach of a contract.

*Id.*

The United States Court of Appeals for the Federal Circuit reversed this decision in *El–Sheikh v. United States*, 177 F.3d 1321 (Fed.Cir.1999). In its analysis, the Federal Circuit defined non-appropriated fund instrumentalities as "federal government entities whose 'monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales.'" *Id.* at 1322 (quoting *Cosme Nieves*

v. *Deshler*, 786 F.2d 445, 446 (1st Cir.1986)). The court found that the first issue was to ascertain whether the United States waived its sovereign immunity to the suit. *Id.* (citing *Saraco v. United States*, 61 F.3d 863, 864 (Fed.Cir.1995)). Accordingly, the court examined the text of the FLSA. The court found that sections 203(e)(2) and 216(b) read together permitted El–Sheikh, as an " 'individual employed by the Government of the United States ... in a nonappropriated fund instrumentality' to maintain in any 'court of competent jurisdiction' '[a]n action to recover' damages 'against [his] employer.' " *Id.* at 1323 (quoting 29 U.S.C. § 203(e)(2); 216(b)). The court found that for purposes of the Fair Labor Standards Act, El–Sheikh's employer is the " 'government of the United States.' " *El–Sheikh*, 177 F.3d at 1323 (citing *Cosme Nieves*, 786 F.2d at 448; *United States v. Hopkins*, 427 U.S. 123, 128, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976)). Accordingly, the court found, because the FLSA expressly waives sovereign immunity, the Court of Federal Claims is a " 'court of competent jurisdiction' under the Fair Labor Standards Act because the Tucker Act gives that court jurisdiction over claims 'against the United States' that are 'founded ... upon' an 'Act of Congress.' " *Id.* at 1324 (citing *Saraco*, 61 F.3d at 865).

The Federal Circuit then turned to the second question of whether, as the Court of Federal Claims held, the non-appropriated funds doctrine barred it from entertaining El–Sheikh's suit. The court stated the "general rule is that the Court of Federal Claims lacks jurisdiction to grant judgment against the United States on a claim against a NAFI because the United States has not assumed the financial obligations of those entities by appropriating funds to them." *Id.* at 1324 (citing *United States v. Hopkins*, 427 U.S. 123, 128, 96 S.Ct. 2508, 49 L.Ed.2d 361

(1976)). The Federal Circuit explained the theory of this rule as follows:

"since our judgments are paid only from appropriated funds, in order to be actionable here the transaction sued upon must be one which, in the contemplation of Congress can obligate public monies. If Congress has indicated that public funds shall not be involved, we cannot grant the relief requested."

*Id.* at 1324 (quoting *Interdent Corp. v. United States*, 203 Ct.Cl. 296, 488 F.2d 1011, 1013 (1973)). Thus, the court found, in general, where the underlying obligation was unfunded, Congress did not intend to waive sovereign immunity from a suit based upon a breach of that obligation.[4] *Id.* Significantly, however, the court found the non-appropriated funds doctrine is inapplicable " 'where Congress has made special provisions,' *Cosme Nieves*, 786 F.2d at 449 (footnote omitted), or where Congress has otherwise indicated by 'special legislation.' " *Id.* at 1324 (quoting *Hopkins*, 427 U.S. at 127, 96 S.Ct. 2508, 49 L.Ed.2d 361). The court found that this standard was met in *El–Sheikh* because the FLSA waives sovereign immunity, thereby permitting NAFI employees to sue the United States as their employer. Accordingly, the non-appropriated funds doctrine was inapplicable in that case.

The court went on to analyze the 1970 amendment to the Tucker Act relating to contracts of certain NAFIs. This provision provides:

For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered

---

4. The Federal Circuit recently affirmed this analysis in *Furash & Co. v. United States*, 252 F.3d 1336 (2001), wherein it stated:

The jurisdictional grant in the Tucker Act is limited by the requirement that judgments awarded by the Court of Federal claims must be paid out of appropriated funds. 28 U.S.C. § 2517. Based on that requirement, it has been held that absent some specific jurisdictional provision to the contrary the Court of

Federal Claims lacks jurisdiction over actions in which appropriated funds cannot be used to pay any resulting judgment.

*Id.* at 1336 (citing *L'Enfant Plaza Props., Inc. v. United States*, 229 Ct.Cl. 278, 668 F.2d 1211 (1982); *Kyer v. United States*, 177 Ct.Cl. 747, 369 F.2d 714 (1966); *United States v. Hopkins*, 427 U.S. 123, 125–26, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976)).

an express or implied contract with the United States.

28 U.S.C. § 1491(a)(1).

The court found this provision irrelevant in the case before it, as it did not affect or undermine the court's conclusion that in the FLSA, Congress authorized suits by NAFI employees against the United States based on violations of the FLSA. The court noted that the 1970 amendment to the Tucker Act was intended to overrule Court of Claims' decisions that such contracts were not contracts of the United States under that Act, by expanding the court's jurisdiction to cover breaches of such contracts. *El–Sheikh*, 177 F.3d at 1325 (citing *Hopkins*, 427 U.S. at 125–26, 96 S.Ct. 2508, 49 L.Ed.2d 361). It further found that nothing in this provision shows that "where Congress intended to waive sovereign immunity to permit suits related to NAFI's, it did so only through the Tucker Act." *El–Sheikh*, 177 F.3d at 1325.

The Federal Circuit in *El–Sheikh* interpreted 28 U.S.C. § 1491(b) as limiting this court's jurisdiction of claims over NAFIs to those based upon a contract. Significantly, however, the Federal Circuit also found jurisdiction was appropriate in this court over a suit brought by NAFI employees against the United States based upon violations of the FLSA because the FLSA contains a specific and explicit waiver of sovereign immunity.

Having concluded, as the Federal Circuit did in *El–Sheikh*, that a NAFI employee may maintain a cause of action in this court based on a statute containing a waiver of sovereign immunity, it is now necessary to consider whether the statute of which plaintiff alleges a violation, 5 U.S.C. § 5597, meets this jurisdictional requisite. That is, the court must discern whether 5 U.S.C. § 5597 contains a waiver of sovereign immunity such that plaintiffs may assert a cause of action against a NAFI in this court.

### B. Whether the Separation Pay Act contains a waiver of sovereign immunity

■ In *El–Sheikh*, the Federal Circuit made clear that for an employee of a non-appropriated fund instrumentality to maintain a suit against a NAFI in this court,

there must be an express waiver of sovereign immunity. *El–Sheikh*, 177 F.3d at 1323. The 1970 Amendment to the Tucker Act waives sovereign immunity to permit suits related to certain NAFIs based on contract. *See* 28 U.S.C. § 1491(a)(1). In the instant case, however, plaintiffs' claim is not based on contract. Rather, plaintiffs assert a violation of 5 U.S.C. § 5597 and any corresponding Department of Defense Regulations. *El–Sheikh* makes it clear that for this court to have jurisdiction over the present action, plaintiffs must not only rely upon the Tucker Act but must also allege a violation of a statute that expressly waives sovereign immunity to permit suits related to NAFIs. *See El–Sheikh*, 177 F.3d at 1323–25.

It is well-established that the United States " 'as sovereign, is immune from suit save as it consents to be sued.' " *Furash & Company*, 46 Fed.Cl. 518, 520 (2000), *aff'd Furash & Co. v. United States*, 252 F.3d 1336 (2001) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). The " 'limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.' " *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (quoting *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957)); *accord NEC Corp. v. United States*, 806 F.2d 247, 249 (Fed.Cir.1986). That is, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969).

Even if plaintiffs could ultimately overcome the hurdle of establishing that the statute of which they allege a violation, 5 U.S.C. § 5597, is a money-mandating statute which applies to them as employees of a non-appropriated fund instrumentality, this statute contains no waiver of sovereign immunity that permits them to maintain a suit in this court against the Army and Air Force Exchange Service, a non-appropriated fund instrumentality. There is simply no provision in 5 U.S.C. § 5597 that even ostensibly waives the government's sovereign immunity

for suits against NAFIs based on a violation of the statute. *See* 5 U.S.C. § 5597.

The only case of which this court is aware in which a waiver of sovereign immunity permitting a suit in this court based on statute against a NAFI is *El–Sheikh*. As previously discussed, in *El–Sheikh* the Federal Circuit found that in the FLSA, Congress expressly authorized suits by NAFI employees against the United States based on violations of the FLSA. In reaching this conclusion, the court turned to the plain language of the FLSA. The court found that:

> Reading sections 203(e)(2) and 216(b) together, they permit El–Sheikh, as an "individual employed by the Government of the United States ... in a non-appropriated fund instrumentality" to maintain in any "court of competent jurisdiction" "[a]n action to recover" damages "against [his] employer."

*El–Sheikh*, 177 F.3d at 1323 (citation omitted).

The court further found that for the purposes of the Fair Labor Standards Act, El–Sheikh's employer is "the government of the United States." *Id.* at 1323. Accordingly, the court concluded that "[b]ecause the Act thus authorized El–Sheikh to sue his 'employer,' the United States, the Act waives the United States' sovereign immunity from such suits." *Id.* at 1324.

In sharp contrast to the FLSA, however, 5 U.S.C. § 5597 contains no express waiver of sovereign immunity. It is manifest from the face of the statute that it makes no special provision for employees of non-appropriated fund instrumentalities to maintain a cause of action in this court for a violation of the act or regulations established pursuant to it. This being so, neither the Tucker Act nor the statute upon which plaintiffs rely, 5 U.S.C. § 5597 waives the government's sovereign immunity to be sued in this case.

## C. Plaintiffs' other asserted grounds for jurisdiction

In addition to relying on 5 U.S.C. § 5597 and 28 U.S.C. § 1491 as bases for this court's jurisdiction, plaintiffs also state in their complaint that 28 U.S.C. §§ 1331, 1346, 2201, 2202 and 2412 confer jurisdiction on this court to hear their case. None of these statutes, however, confer jurisdiction over this action in this court. Title 28 U.S.C. §§ 1331 and 1346 concern the jurisdiction of United States District Courts and not that of this court. *See Hannon v. United States*, 29 Fed.Cl. 142, 143 n. 3 (1993). The Declaratory Judgment Act, 28 U.S.C. § 2201, 28 U.S.C. § 2202, also does not provide a basis of jurisdiction over this action. The Supreme Court has stated that "[i]n the absence of an express grant of jurisdiction from Congress, we decline to assume that the Court of Claims has been given the authority to issue declaratory judgments." *United States v. King*, 395 U.S. 1, 5, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). *See also Logan Canyon Cattle Assoc. v. United States*, 34 Fed.Cl. 165, 169 (1995). The Declaratory Judgment Act, however, does not provide for such authority in this case. *See id.*

Plaintiffs also rely upon 28 U.S.C. § 2412. This statute, the Equal Access to Justice Act, concerns the recovery of costs and attorney fees, and does not confer jurisdiction on this court over plaintiffs' entire action. Accordingly, none of the statutes to which plaintiffs cite vest this court with jurisdiction to hear their action.[5]

## D. Law of the Case

Finally, a brief note on the law of the case doctrine is appropriate at this juncture. This doctrine " 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.' " Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE, § 4478 (quoting *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912)).

The United States District Court Northern District of Texas, Dallas Division, transferred plaintiffs' claim under the Separation Pay Act to this court pursuant to 28 U.S.C.

---

**5.** Plaintiffs request that if the court does not deny the government's motion to dismiss, they be allowed to conduct discovery. Plaintiffs' request is denied. The court has determined that it lacks jurisdiction over this suit, therefore, it cannot grant plaintiffs' request for discovery.

§ 1631. *See Jimmie Ann Taylor v. William Perry, Sec'y Dep't of Defense, and Army and Air Force Exchange Serv.,* No. 3–97W2344–BD slip op. at 8 (N.D.Tex. Sept. 24, 1997). It found that "exclusive jurisdiction [of plaintiffs' pay claim] lies in the Court of Federal Claims." *Id.* at 3. In reaching this decision it found that:

> AAFES is an "arm of the government deemed by it essential for the performance of governmental functions." *Army & Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 733, 102 S.Ct. 2118, 2122, 72 L.Ed.2d 520 (1982). Consequently, a claim against AAFES is a "claim against the United States" under the Tucker Act. *Sheehan,* 102 S.Ct. at 2122; *see also Mullally v. United States,* 95 F.3d 12, 14 (8th Cir.1996); *Hooks v. Army & Air Force Exchange Service,* 944 F.Supp. 503, 505 (N.D.Tex.1996).

*Id.* at n. 3.

For the reasons discussed *supra,* this court has determined that it does not have jurisdiction over a claim against a NAFI based on statute absent an express waiver of sovereign immunity in that statute. No such waiver is present here. This court must conclude that it lacks jurisdiction to hear this suit irrespective of the United States District Court Northern District of Texas, Dallas Division's conclusion to the contrary. *See Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 819, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988) (stating that " '[t]he law of the case will be disregarded only when the court has a clear conviction of error' ") (quoting *Fogel v. Chestnutt,* 668 F.2d 100, 109 (C.A.2 1981)). *See also Mendenhall v. Barber–Greene Co. et al.,* 26 F.3d 1573 (Fed.Cir. 1994); *Doko Farms v. United States,* 861 F.2d 255, 256 (Fed.Cir.1988).

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss is **GRANTED;**

(2) The Clerk's office is directed to enter judgment for defendant; and

(3) Each party shall bear its own costs.